520 F.2d 622
 75-2 USTC P 9642
 UNITED STATES of America and Steven L. Bell, Special Agent
of the Internal Revenue Service
v.
Harry LAFKO and Frederick J. Rolle, Jr.
Appeal of Frederick J. ROLLE, Jr., Defendant-Intervenor.
 No. 74-2083.
 United States Court of Appeals,
Third Circuit.
 Argued May 2, 1975.
Decided July 31, 1975.
 
 John J. Francis, Jr., Shanley & Fisher, Newark, N. J., for appellants.
 Scott P. Crampton, Asst. Atty. Gen., Carleton D. Powell, Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D. C., for appellees.
 Before FORMAN, VAN DUSEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 FORMAN, Circuit Judge.
 This appeal is from a final order of the District Court of New Jersey enforcing an administrative summons issued by Internal Revenue Service Special Agent Steven L. Bell. The summons, authorized by 26 U.S.C.A. § 7602(2),[1] calls upon Mr. Harry Lafko, an accountant, to produce his copies of the 1968 through 1970 federal income tax returns of Frederick J. and Barbara Rolle along with the original work papers attached thereto. For reasons discussed herein, the District Court's order enforcing the summons will be reversed and the case will be remanded for reconsideration.
 The factual background is uncontroverted. In June 1971 Revenue Agent Paul Signer, assigned to the Internal Revenue Service's Audit Division, began an audit of the Rolles' 1969 tax return. Upon completion of the audit two months later, Agent Signer forwarded his report to Internal Revenue's Intelligence Division as a case potentially involving fraud. Thereafter, a joint investigation was conducted by the Audit and Intelligence Divisions during which time the scope of the investigation was apparently expanded to include the Rolles' tax returns for 1968 through 1971. As a result of this joint investigation, in September 1973 Intelligence Division agents formally recommended that Mr. Rolle be prosecuted under 26 U.S.C.A. § 7206(1) for filing false income tax returns for the years 1968 through 1971 and that the civil fraud penalty be applied to the Rolles' tax deficiencies. This recommendation was forwarded to Mr. Kevin Reilly, an attorney in Internal Revenue's Regional Counsel's Office, whose function it is to evaluate the available evidence and decide, subject to review by his supervisor, whether to proceed criminally and/or civilly against the taxpayer. Internal Revenue, of course, has no authority to conduct a prosecution. Authority to prosecute is lodged in the Justice Department, so that once the Regional Counsel's Office decides to recommend prosecution, the case is transferred from Internal Revenue to the Justice Department.
 According to the taxpayer, but disputed by the Government, Mr. Reilly improperly used Internal Revenue's summons power to gather evidence for prosecution. Before making his decision on whether or not the Rolle case should be prosecuted, Mr. Reilly decided to seek an analysis of handwriting appearing on certain adding machine tapes attached to the taxpayer's copies of his returns. These tapes were obtainable by Internal Revenue under its § 7602(2) summons authority. Thus on December 7, 1973, and at Mr. Reilly's request, Internal Revenue's Special Agent Steven L. Bell served a § 7602(2) summons on Mr. Harry Lafko, the custodian of Mr. Rolle's financial records, seeking "Accountant's copies of Form 1040, for the years 1968, 1969, and 1970 in the names of Frederick J. and Barbara Rolle, and original workpapers attached thereto." Mr. Rolle reacted to the summons by obtaining a temporary restraining order and preliminary injunction in the United States District Court for the District of New Jersey restraining Mr. Lafko from delivering the requested records.[2] The United States then brought the instant action against Mr. Lafko to compel compliance with the summons[3] and Mr. Rolle intervened on his own behalf.[4]
 A hearing was held on July 2, 1974. In opposition to the Government's attempt to enforce the summons, intervenor Rolle asserted that Internal Revenue was improperly using its summons power to obtain incriminating evidence for use in Mr. Rolle's prosecution a purpose not authorized by 26 U.S.C.A. § 7602. The Supreme Court has recognized this "improper purpose" defense as a ground for refusing to enforce an Internal Revenue summons. See Reisman v. Caplin,375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Section 7602 permits the Internal Revenue Service to summon a taxpayer's records for the limited purpose "of ascertaining the correctness of any return." Internal Revenue has no authority to conduct a criminal investigation through the use of its summons power. Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); United States v. Fisher, 500 F.2d 683, 686-87 (3d Cir. 1974).
 In his letter opinion of August 6, 1974, the District Judge rejected Mr. Rolle's contention that Internal Revenue issued the summons for an unauthorized purpose, citing as his sole reason:
 ". . . this court is satisfied that although Rolle is under investigation for possible civil and criminal proceedings, the matter has not reached a stage where any decision has been made by the Justice Department to proceed.
 "Under these circumstances, it is clear that the defendant Lafko should be directed to comply with the summons issued by the Internal Revenue Service. Donaldson v. United States, 400 U.S. 517 (91 S.Ct. 534, 27 L.Ed.2d 580) (1971)." (emphasis supplied).
 This application of the Donaldson standard is patently erroneous. A preceding Justice Department recommendation to prosecute is not the sine qua non for proving that an Internal Revenue summons was issued for an improper purpose. The District Judge apparently relied on the statement in the Donaldson opinion that an Internal Revenue summons is enforceable if issued "in good faith and prior to a recommendation for criminal prosecution."[5] 400 U.S. at 536, 91 S.Ct. at 545. At a minimum, the District Judge's letter opinion ignores the question of good faith, a question entirely separate from whether or not a formal recommendation to prosecute had been made. As stated in United States v. Wall Corp., 154 U.S.App.D.C. 309, 475 F.2d 893 (1972):
 "Our inquiry is not ended upon a determination that prosecution has neither been instigated nor recommended, since Donaldson also requires that a summons be issued 'in good faith.' Thus, if it can be shown that the investigating agent had already formed a firm purpose to recommend criminal prosecution even though he had not as yet made a formal recommendation, issuance of the summons would presumably be in bad faith. Similarly, if the civil liability were already determined, the summons would appear to be solely for a criminal purpose." Id. at 895.
 Moreover, the District Judge incorrectly applied Donaldson's "prior to a recommendation for criminal prosecution" language. A full reading of the Donaldson opinion indicates that the recommendation under discussion was not one emanating from the Justice Department. Instead, the Court was discussing a recommendation for prosecution made within the Internal Revenue Service.[6] In the language of the Donaldson Court:
 
 
 1
 "We further bear in mind that the Service has district offices, each with an audit division and a criminal division; that the Audit Division's program emphasizes the civil aspects of enforcement but embraces 'participation with special agents of the Intelligence Division in the conduct of tax fraud investigations,' § 1118.4; that the Intelligence Division enforces the criminal statutes . . ., § 1118.6; that each assistant regional commissioner for intelligence . . . 'approves or disapproves recommendations for prosecution,' § 1114(10); and that recommendations for prosecution are processed through the office of regional counsel and by that office to the Department of Justice, § 1116(3). This demonstrates that the special agent may well conduct his investigation jointly with an agent from the Audit Division; . . . and that any decision to recommend prosecution comes only after the investigation is complete or is sufficiently far along to support appropriate conclusions." 400 U.S. at 534-35, 91 S.Ct. at 544.
 
 
 2
 This application of an incorrect standard in determining whether the summons was issued for an unauthorized purpose would, by itself, require reversal of the District Court. It bears noting, however, that there are other troublesome aspects of the proceedings in the District Court. At the hearing below, Mr. Rolle requested the Government to produce for his examination a document now known as Exhibit G-1, an intra-departmental memorandum from Internal Revenue's counsel, Mr. Reilly, to an agent in Internal Revenue's Intelligence Division. Mr. Rolle contended that the memorandum would support his assertion that the purpose behind issuance of the summons was the gathering of evidence for federal prosecution. The Government objected to disclosure of G-1 on the grounds that it was part of an investigatory file and was privileged under the attorney-client and work product privileges. Mr. Rolle then clarified his request by asking the court to review the memorandum in camera and to excise any information not relevant to the summons enforcement proceeding. Without addressing the Government's objections, the District Judge stated:
 
 
 3
 "What we're going to do I'll mark it (Exhibit G-1) for identification. The Clerk just stepped out. I can't do it now. I'll examine it in camera." (emphasis supplied).
 
 
 4
 No further mention of G-1 was made until the very end of the hearing, at which time the following colloquy took place:
 
 
 5
 "The Court: Now, how about that (exhibit) we marked for identification I was going to examine in camera?
 
 
 6
 "Mr. Sevila (Government Counsel): I have that, Your Honor. There is a slight problem with that.
 
 
 7
 "The Court: I'm not supposed to look at it either, is that what you mean?
 
 
 8
 "Mr. Sevila: I'm afraid. I called the Commissioner's office during that brief luncheon break we took, and they were going to call your chambers and let us know something. Perhaps they will call. I can go call them now maybe. But I haven't heard from them.
 
 
 9
 "The instruction sheet I got by way of teletype was only related to documents that would be turned over to the taxpayer or his representative, and it didn't have anything to do with an in camera inspection of the document that the Court might wish to see.
 
 
 10
 "So if I may have leave of the Court, I would like to await instructions from them on that one point.
 
 
 11
 "The Court: All right. Fine. . . . "
 
 
 12
 The document labeled G-1 was, thus, left in a somewhat uncertain status at the close of the hearing.
 
 
 13
 When the District Judge transmitted his August 6, 1974 letter opinion announcing his decision to enforce the Internal Revenue summons, no mention was made of Mr. Rolle's request to see G-1. A final order formalizing the letter opinion was signed on September 16, 1974, but again no mention was made of G-1. Subsequently, Mr. Rolle's counsel wrote to the District Judge seeking permission to see G-1, apparently for the purpose of taking an appeal. The District Judge responded by letter on October 22, 1974:
 
 
 14
 "I have marked exhibit G-1 into evidence and have sealed the same. If you desire to examine it for the purposes of the Appeal, I suggest you apply to a circuit judge." (emphasis supplied).
 
 
 15
 In accordance with this suggestion, Mr. Rolle has accompanied his appeal before this court with a motion to examine and copy Exhibit G-1.
 
 
 16
 A lingering problem with respect to G-1 is that although the District Judge's letter of October 22, 1974 states that he marked G-1 "into evidence," it appears that he never ruled on the Government's objection to the admission of G-1 on the ground that G-1 is an attorney's work product and an intra-agency memo. Adding to the confusion is the fact that although the Government has not filed a cross-appeal asserting the impropriety of marking G-1 into evidence, the Government's brief opposing Mr. Rolle's motion to examine G-1 is devoted to the work product and intra-agency grounds for exclusion, completely ignoring the fact that the District Judge appears to have already admitted G-1.
 
 
 17
 There is considerable doubt as to whether the District Judge actually intended to mark G-1 "into evidence." The letter opinion of August 6, 1974 gives no indication that the District Judge considered Exhibit G-1 in reaching his decision to enforce the Internal Revenue summons. Indeed, the first reference to G-1 as admitted "into evidence" occurs in the letter of October 22nd, more than one month after Mr. Rolle's notice of appeal had been filed. It is at least questionable whether the District Judge retained the power to admit new evidence after the notice of appeal was filed on September 16, 1974. Filing of a notice of appeal immediately transfers jurisdiction of a case from the District Court to the Court of Appeals. Hovey v. McDonald, 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888 (1883); Plant Economy, Inc. v. Mirror Insulation Co., 308 F.2d 275, 276-77 (3d Cir. 1962). During the pendency of the appeal the District Court retains only the limited authority to take any steps that will assist the Court of Appeals in its determination. Moore's Federal Practice § 203.11.
 
 
 18
 If the District Judge admitted G-1 into evidence, and assuming that he had the power to admit it, then the contents of G-1 must be made available to Mr. Rolle. Although there are few cases discussing the subject, it appears that no court has ever held that a party to the proceeding may be denied access to admitted evidence. The right to examine admitted evidence, like the right to cross-examine testifying witnesses, is a necessary predicate to the introduction of rebuttal evidence and an essential safeguard of the accuracy and completeness of the evidence. Cf. Alford v. United States, 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624 (1931); 5 Wigmore, Evidence § 1367.
 
 
 19
 On remand, the District Court should first consider Mr. Rolle's as yet undecided motion to examine and copy Exhibit G-1. Then, the Court should consider anew the enforceability of the summons, holding an evidentiary hearing where necessary, in accordance with the principles and guidelines set forth in United States v. McCarthy, 514 F.2d 368 (3d Cir. No. 74-1665, 1975). The District Court's order enforcing the summons will be reversed and the case remanded for further proceedings consistent with the principles set forth herein.
 
 
 
 [1]
 26 U.S.C.A. § 7602(2) provides:
 "Examination of books and witnesses
 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized
 "(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 
 
 [2]
 Rolle v. Lafko, Civil No. 1905-73 (D.N.J.1973)
 
 
 [3]
 When Mr. Lafko failed to comply with the § 7602 summons on or before its return date, the revenue agent became entitled to seek enforcement in the district court under 26 U.S.C.A. § 7604(b). That subsection provides in pertinent part:
 "Whenever any person summoned under section . . . 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."
 
 
 [4]
 This procedure was suggested in Reisman v. Caplin, 375 U.S. 440, 449-50, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)
 
 
 [5]
 Technically speaking, this statement in the Donaldson opinion is mere dictum. See United States v. McCarthy, 514 F.2d 368, n. 7 (3d Cir. No. 74-1665, 1975). We note that the District Court did not have the benefit of the principles and guidelines of the McCarthy case (see page --- below) when it entered its September 16, 1974 order from which this appeal was taken
 
 
 [6]
 On the incomplete record before us and without the benefit of counsel's analysis, we decline to decide whether we would follow United States v. Billingsley, 469 F.2d 1208 (10th Cir. 1972), in determining where in the Internal Revenue's procedures a "recommendation" to prosecute occurs. Billingsley held that the "recommendation" referred to by the Supreme Court in Donaldson occurs, at the earliest, when Internal Revenue passes its recommendation to prosecute on to the Justice Department. Id. at 1209