Herbert M. GANNET, Appellant,

v.

FIRST NATIONAL STATE BANK
OF NEW JERSEY.

UNITED STATES of America and Carl
E. Reichelt, Special Agent of Internal
Revenue Service,

v.

FIRST NATIONAL STATE BANK,
Herbert M. GANNET, Intervenor
in D. C., Appellant.

Nos. 75–2362 and 76–1234.

United States Court of Appeals,
Third Circuit.

Argued Oct. 5, 1976.

Decided Dec. 27, 1976.

Herbert M. Gannet, pro se, Harvey R. Poe, Dino D. Bliablias, Stein, Bliablias & McGuire, Newark, N. J., for appellant.

John J. Francis, Jr., Shanley & Fisher, Newark, N. J., for appellee First National State Bank of New Jersey.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Carleton D. Powell, and Daniel F. Ross, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellees United States and Carl E. Reichelt; Jonathan L. Goldstein, U. S. Atty., George E. Mittelholzer, Asst. U. S. Atty., Newark, N. J., of counsel.

Franzblau, Falkin & DiMarzio, P. S., Newark, N. J., for New Jersey State Bar Assn., amicus curiae.

OPINION OF THE COURT

Before BIGGS, VAN DUSEN and ROSENN, Circuit Judges.

VAN DUSEN, Circuit Judge.

This is an appeal by intervenor Herbert M. Gannet from a district court enforcement order[1] directing the First National State Bank of New Jersey to comply with an Internal Revenue Service summons requesting the identity of the purchaser of

---

1. This order of February 23, 1976, in Civil 76–124 (D.N.J.) appears at 27a. The notice of appeal challenging the order was filed February 26, 1976, appears at 30a and was docketed at our No. 76–1234 on February 27, 1976.

two cashier's checks, and the sources of the funds used to purchase those checks.[2] The question presented here is whether the attorney-client privilege protects this information from disclosure, since the cashier's checks were deposited in an attorney's trust account to facilitate anonymous transmission to the IRS in payment of a tax deficiency of an unknown taxpayer. We hold that it does not.

Since the facts of this case have been set forth in detail in *United States v. First National State Bank of New Jersey,* 540 F.2d 619, No. 76–1261 (3d Cir., 1976),[3] we need not restate them here, and proceed directly to consideration of the issues raised on this appeal.

## I

The instant case is similar to that of *Schulze v. Rayunec,* 350 F.2d 666 (7th Cir. 1965). There, Boughner, a tax attorney, was retained to represent a taxpayer who wished to remain anonymous, and delivered a cashier's check for $215,499.95 to the Internal Revenue Service without disclosing the taxpayer's identity. As in this case, when the IRS received the check, a special agent attempted to summon from the issuing bank information calculated to reveal the purchaser's identity. Upon the bank's refusal to comply, the IRS petitioned the district court for enforcement of the summons, and the attorney intervened. Bough-

ner sought to invoke the attorney-client privilege, claiming that the bank had acted as his agent, and that he had forwarded the check in the course of offering confidential legal services to a client.

The Seventh Circuit was not persuaded that the privilege applied, and noted that "Boughner personally did not acquire any rights concerning the bank's books and records," 350 F.2d at 668, by purchasing a cashier's check on behalf of an anonymous client. The court added that the bank

". . . was not hired or employed to render any confidential service. The communication, if any, of the client's name was not made in order to enable the bank to aid Boughner in giving any legal advice. In fact, it was not absolutely necessary to disclose the client's name. Boughner could have purchased the cashier's check by currency, although a currency transaction involving $215,000 would, undoubtedly, have been quite unusual."

350 F.2d at 668.

The court held that bank records pertaining to the cashier's check which the intervenor transmitted to the IRS were not "clothed with the attorney-client privilege." *Id.*[4]

This result is supported by subsequent developments in the law. The Bank Secrecy Act of 1970 (Act), 12 U.S.C. § 1829b,[5] requires that all federally insured banks

**2.** This summons dated November 19, 1975, appears at 7a. After issuance of this summons, Gannet commenced Civil Action 75–2028 seeking to enjoin the bank from complying with this summons. When this application for injunctive relief was denied on December 1, 1975 (11a), Gannet appealed at our No. 75–2362. On April 8, 1976, this court entered an order granting a consent motion for leave to consolidate the appeals at Nos. 75–2362 and 76–1234 as a single proceeding.

**3.** See also *Gannet v. First National State Bank of New Jersey,* 410 F.Supp. 585 (D.N.J.1976), constituting the district court opinion in support of its ruling which was reversed at our No. 76–1261 by the July 28, 1976, opinion. (See note 7 of the July 1976 opinion). It is noted that all parties agree that these appeals are not moot. See *United States v. Friedman,* 532 F.2d 928, 931 (3d Cir. 1976). There is every indica-

tion that the Government will continue to seek bank records in this case.

**4.** This court has stated in at least two opinions that absent unusual circumstances the identity of the client does not come within the attorney-client privilege. See *In re Semel,* 411 F.2d 195, 197 (3d Cir. 1969); *Mauch v. Commissioner of Internal Revenue,* 113 F.2d 555, 556–57 (3d Cir. 1940).

**5.** P.L. 91–508, 84 Stat. 1114, includes this language in § 101 (see 12 U.S.C. § 1829b):

"Retention of records by insured banks

. . . . .

". . . (a)(1) The Congress finds that adequate records maintained by insured banks have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings. The Congress further finds

maintain records of bank account transactions. The rationale, as § 1829b(a)(2) expressly recognizes, is the usefulness of such records in "criminal, tax, or regulatory investigations or proceedings."

The Supreme Court, implicitly following *Schulze v. Rayunec, supra,* held the record-keeping requirements of this Act constitutional in *California Bankers Assn. v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974), noting that

> "[b]anks are . . . not . . . neutrals in transactions involving negotiable instruments, but parties to the instruments with a substantial stake in their continued availability and acceptance. . . ."

416 U.S. at 48–49, 94 S.Ct. at 1511.

Last term, the Supreme Court upheld the constitutionality of the disclosure of information recorded by banks under the Act in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Miller urged that he had a Fourth Amendment interest in the records kept by banks, as copies of personal records made available to the banks for a limited purpose. However, the Supreme Court, after considering the standards enunciated in *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), found no legitimate expectation of privacy in the contents of records maintained by the banks under the mandate of the Act, using this language at 442 of 425 U.S., at 1624 of 96 S.Ct.:

> ". . . checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained in-

---

"that microfilm or other reproductions and other records made by banks of checks, as well as records kept by banks of the identity of persons maintaining or authorized to act with respect to accounts therein, have been of particular value in this respect.

"(2) It is the purpose of this section to require the maintenance of appropriate types of records by insured banks in the United States where such records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.

"(b) Where the Secretary of the Treasury (referred to in this section as the ('Secretary') determines that the maintenance of appropriate types of records and other evidence by insured banks as a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, he shall prescribe regulations to carry out the purposes of this section.

"(c) Each insured bank shall maintain such records and other evidence, in such form as the Secretary shall require, of the identity of each person having an account in the United States with the bank and of each individual authorized to sign checks, make withdrawals, or otherwise act with respect to any such account. The Secretary may make such exemptions from any requirement otherwise imposed under this subsection as are consistent with the purposes of this section.

"(d) Each insured bank shall make, to the extent that the regulations of the Secretary so require—

"(1) a microfilm or other reproduction of each check, draft, or similar instrument drawn on it and presented to it for payment; and

"(2) a record of each check, draft, or similar instrument received by it for deposit or collection, together with an identification of the party for whose account it is to be deposited or collected, unless the bank has already made a record of the party's identity pursuant to subsection (c) of this section.

"(e) Whenever any individual engages (whether as principal, agent, or bailee) in any transaction with an insured bank which is required to be reported or recorded under the Currency and Foreign Transactions Reporting Act, the bank shall require and retain such evidence of the identity of that individual as the Secretary may prescribe as appropriate under the circumstances.

"(f) In addition to or in lieu of the records and evidence otherwise referred to in this section, each insured bank shall maintain such records and evidence as the Secretary may prescribe to carry out the purposes of this section.

"(g) Any type of record or evidence required under this section shall be retained for such period as the Secretary may prescribe for the type in question. Any period so prescribed shall not exceed six years unless the Secretary determines, having regard for the purposes of this section, that a longer period is necessary in the case of a particular type of record or evidence.

"(h) The Secretary shall include in his annual report to the Congress information on his implementation of the authority conferred by this section and any similar authority with respect to record-keeping or reporting requirements conferred by other provisions of law."

cluding financial statements and deposit slips, contain only information voluntarily conveyed to banks and exposed to their employees in the ordinary course of business. The lack of any legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require records to be maintained because they 'have a high degree of usefulness in criminal, tax, regulatory investigations and proceedings.' . . .

"The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the government."

**6.** Gannet relies upon New Jersey Supreme Court Rule 1:21–6 which includes the following language:

"Recordkeeping; Sharing of Fees; Examination of Records

"(a) *Required Bank Accounts.* All attorneys who practice in this State shall maintain in a financial institution in New Jersey, in their own name, or in the name of a partnership of attorneys, or in the name of the attorney or partnership of attorneys by whom they are employed:

"(1) a trustee account or accounts, separate from their business and personal accounts and from any accounts which they may maintain in the capacity of executor, guardian, trustee or receiver, into which trustee account or accounts all funds entrusted to their care shall be deposited; and

"(2) a business account into which all funds received for professional services shall be deposited.

"The names of the institutions in which such accounts are maintained and identification numbers of each account shall be recorded on the reporting form filed with the annual payment, pursuant to R. 1:28–2, to the Clients' Security Fund of the Bar of New Jersey. Such information shall be available for use in accordance with paragraph (f) of this rule.

"(b) *Required Bookkeeping Records.* All attorneys and partnerships of attorneys who practice in this State shall maintain for 7 years after the events which they record:

"(1) the records of all deposits in and withdrawals from the accounts specified in paragraph (a) of this rule and of any other bank account which concerns or affects their practice of law; and

"(2) a ledger book or similar record for all trustee accounts, showing the source of all funds deposited in such accounts, the names

II

The intervenor, Gannet would distinguish this case on the basis that state law [6] suggests that records in any way derived from an attorney's trust account are protected by the attorney-client privilege. The support for this view is a state requirement that attorneys maintain trust accounts in which to hold separate clients' funds.

However, as Gannet has stated correctly in his brief in *United States v. First National State Bank of New Jersey, Herbert M. Gannet, Intervenor-Appellant* (No. 76–1261), *supra* at 8, which he incorporated in his brief filed in these appeals and "made a part hereof by reference" (page 7):

of all persons for whom the funds were held, the amount of such funds, the charges or withdrawals from such accounts, and the names of all persons to whom such funds were disbursed; and

"(4) copies of all statements to clients showing the disbursement of funds to them or on their behalf; and

"(5) copies of all bills rendered to clients; and

"(6) copies of all records showing payments to attorneys, investigators or other persons, not in their regular employ, for services rendered or performed.

"All attorneys who practice in this State shall make accurate entries of all financial transactions in their records of receipts and disbursements, in their trustee accounts, in their ledger books and similar records, and in any other books of account kept by them in the regular course of their practice, which entries shall be made at or near the time of the act, condition or event recorded.

"(f) *Availability of Records.* Any of the records required to be kept by this rule shall be produced in response to a subpoena duces tecum issued pursuant to R. 1:20–6 in connection with a complaint or investigation pending before an ethics committee appointed pursuant to R. 1:20 or shall be produced at the direction of the Supreme Court before any person designated by it. When so produced, all such records shall remain confidential except for the purposes of the particular proceeding and their contents shall not be disclosed by anyone in such a way so as to violate the attorney-client privilege."

See *Gannet v. First National State Bank of New Jersey, supra* note 3, at 588–89.

"It is uncontroverted that since the adoption of the Federal Rules of Evidence on July 1, 1975, the resolution of the foregoing question [Does the attorney-client privilege extend, under the facts presented, to the identity of the client?] is governed by Federal common law and not State law. See Rule 501 and *U. S. v. Osborn,* 75–2 USTC ¶ 9865 [409 F.Supp. 406] (D.Ore.1975)." [7]

The Conference Committee Notes to Federal Rule of Evidence 501 (House Report No. 93–1597 on P.L. 53–595) state:

"In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law. As Justice Jackson has said:

"A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.

"*D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 471 [62 S.Ct. 676, 86 L.Ed. 956] (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus state law does not supply the rule of decision (even though the federal court may apply a rule

derived from state decisions), and state privilege law would not apply."

Since this action is a "nondiversity jurisdiction civil case," we conclude that the New Jersey Supreme Court Rule 1:21–6 is inapplicable. In our estimation, federal law provides no basis for a finding that the attorney-client privilege applies here.

We find further support for our view in the Bank Secrecy Act of 1970, which indicates a strong congressional interest in making records of bank transactions available for use in criminal, tax, and regulatory investigations and proceedings. No mention is made in that statute of any exceptions to either compilation or dissemination of the information recorded and maintained. As noted above, the Supreme Court, in *California Bankers Ass'n* and *Miller* held the Act constitutional, finding that information voluntarily disclosed carries no legitimate expectation of privacy. In the instant case, there is no suggestion that the information sought to be protected was disclosed other than voluntarily.

We hold that the attorney-client privilege is not applicable to bank records merely because they derive from transactions involving an attorney's trust account. To hold otherwise would be to deny effect to the congressional purpose in enacting this legislation by allowing attorneys the discretion to insulate certain transactions from investigation by employing their trust accounts. Such a course would contradict both case law and statute.

### III

■ We have considered the other issue [8] raised by the intervenor-defendant, wheth-

---

7. Federal Rule of Evidence 501 provides:
   "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person,

government, State, or political subdivision thereof shall be determined in accordance with State law."

8. We recognize that intervenor-defendant has adopted the portion of his brief in *United States v. First National State Bank of New Jersey,* No. 76–1261 (3d Cir. 1976; see 540 F.2d 619), directed toward the question of whether an attorney might be compelled to divulge the identity of his client, or whether a client's identity is protected by attorney-client privilege. Intervenor-defendant Gannet thereby raises again here precisely the same issue which was

er the Internal Revenue Service summons was issued in bad faith and constitutes an abuse of the district court's process, and find it without merit.[9]

### IV

Having determined that bank records kept in accordance with the Bank Secrecy Act of 1970 are not clothed with the attorney-client privilege merely because they derive from an attorney's trust account maintained at the bank, we will affirm (a) the December 1, 1975, district court order (D.N.J.Civil 75–2028) denying injunctive relief (see note 2 above), and (b) the February 23, 1976, district court order (D.N.J.Civil 76–124; see note 1 above).

before this court in the above-mentioned case. At that time, a panel of this court found that the Government was without the statutory authority in the bank summons enforcement proceeding to ask Gannet the four questions related to discovering his client's identity. We reversed "the district court's order which adjudged Gannet in contempt for refusing to answer [those] questions. In disposing of this appeal on the threshold issue of statutory power, we [did] not reach and hence [expressed] no opinion concerning Gannet's claim of attorney-client privilege." Since this court removed the threat of Gannet's being compelled to answer questions relating to his client's identity, this issue was resolved, in appellant's favor, and does not concern us here.

**9.** The burden of showing an improper purpose in issuing an Internal Revenue Service summons is on the taxpayer, *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). And, as stated in *United States v. Fisher,* 500 F.2d 683, 687 (3d Cir. 1974), *aff'd,*

425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976):

"It is now well settled that the possibility that criminal prosecution as well as civil liabilities may arise from a tax investigation is not a sufficient ground for refusing to enforce a summons issued under Section 7062 in good faith and prior to a recommendation for prosecution."

Here, as in *Fisher,* 500 F.2d at 688, it appears that the intervenor-defendant would have us hold that the burden of showing improper purpose is met merely by showing that a Special Agent of the Service's Intelligence Division was the person assigned to the case. The record reveals that Special Agent Reichelt was assigned to determine the identity of the anonymous taxpayer alone. Appendix at 134a, 140a. There is no basis whatsoever for a finding of abuse of process. See also *United States v. Friedman,* 532 F.2d 928, 932 (3d Cir. 1976); *United States v. Lafko,* 520 F.2d 622, 624–25 (3d Cir. 1975); *United States v. McCarthy,* 514 F.2d 368, 373–76 (3d Cir. 1975).