**CED'S INC., d/b/a Products For Power, Plaintiff-Appellee,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and Lee Thomas, Acting Administrator, United States Environmental Protection Agency, Defendants-Appellants.**

No. 83–2608.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1984.

Decided Sept. 28, 1984.

Rehearing and Rehearing En Banc Denied Oct. 29, 1984.

James R. Morrin, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff-appellee.

Arthur E. Gowran, Dept. of Justice, Washington, D.C., Ralph J. Colleli, Jr., Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellants.

Before ESCHBACH and FLAUM, Circuit Judges, and JAMESON, Senior District Judge.*

* The Honorable William J. Jameson, Senior District Judge, United States District Court of Montana, sitting by designation.

ESCHBACH, Circuit Judge.

The Environmental Protection Agency appeals from an order of the district court enjoining it from making use of copies of business records it had obtained from Ced's Inc. under an administrative warrant and ordering it to return the copies to the company. The principal issue presented is the scope of the Environmental Protection Agency's authority to copy records of companies under section 114(a) of the Clean Air Act. We reverse.

## I

Ced's Inc. ("Ced's"), doing business as Products for Power, manufactures and distributes automotive engine exhaust equipment, including a device known as the "Test Tube," a length of hollow metal pipe shaped and fitted to replace the catalytic converter in an automobile exhaust system. Under section 203(a) of the Clean Air Act (the "Act"), 42 U.S.C. § 7522(a)(3)(B), those in the business of repairing and servicing automobiles are prohibited from permanently replacing a catalytic converter with a pipe such as the Test Tube, although they may temporarily make the substitution for the purpose of determining if the catalytic converter needs to be replaced. The owner of an automobile is not prohibited from permanently replacing its catalytic converter with a Test Tube. Ced's markets the Test Tube nationwide, but exclusively to warehouse distributors, not directly to retailers or automotive repair facilities.

The Environmental Protection Agency ("EPA") suspects that the unlawful permanent installation of catalytic converter replacement pipes by automotive repair and service facilities is a pervasive problem with potentially far-reaching deleterious environmental consequences. It has accordingly been investigating the practice.

On April 5, 1983, the EPA applied to a magistrate for an administrative warrant under section 114(a) of the Act, 42 U.S.C. § 7414(a), authorizing the examination and copying of certain of Ced's business records pertaining to the promotion and sale of the Test Tube. The application was based on evidence which, the EPA claimed, established administrative probable cause to believe that Ced's may have caused certain automobile repair facilities to remove catalytic converters permanently and to replace them with Test Tubes in violation of section 203(a) of the Act. The magistrate issued the warrant *ex parte*. On April 6 EPA agents served the warrant, entered Ced's facility during normal business hours, and examined and copied documents. While the inspection was in progress, Ced's filed with the magistrate a motion to quash the warrant. A hearing was held on April 6, and the magistrate denied the motion.

On April 7 Ced's filed a motion in the district court seeking a temporary restraining order or preliminary injunction enjoining execution of the warrant and ordering the return of the documents, and a complaint requesting a permanent injunction forbidding the EPA to enter Ced's premises and to inspect Ced's records. On the same day the EPA filed a motion to dismiss the complaint. The court held hearings on these motions and on July 1 signed an order and issued a memorandum opinion denying the EPA's motion to dismiss, granting a permanent injunction prohibiting the EPA from making any use of materials obtained from Ced's under the administrative warrant, and ordering the EPA to return those materials, including any copies, to the company. The order was entered on July 6.

On July 22 the EPA filed its motion for stay pending appeal, and on August 5 the district court stayed compliance with that portion of its order that required the EPA to return to Ced's copies of documents that were inspected pursuant to the administrative search warrant. On August 31 the EPA filed its notice of appeal to this court.

On November 1 the district court (apparently viewing its order of August 5 as merely an interim order) entered a second order with respect to the EPA's motion for stay pending appeal, this time denying the motion but permitting the EPA to retain the copies of Ced's documents pending the appeal, without using them in any way.

Attached to the order was a supplemental memorandum opinion which did not address itself to the EPA's motion for a stay but instead set forth additional grounds in support of its order of July 1 granting a permanent injunction. The additional grounds took the form entirely of conclusions of law; there were no new findings of fact.

In this appeal the EPA contends that the district court erroneously determined that the EPA had no authority under section 114(a)(2)(B) of the Act to inspect and copy Ced's business records and that the district court exceeded its jurisdiction by issuing a supplemental memorandum opinion amending its previous order after the EPA had filed its notice of appeal.

## II

Because it affects the scope of our review, we consider first the question whether the district court exceeded its jurisdiction in issuing the supplemental memorandum opinion on November 1, nearly four months after judgment was entered and two months after the EPA filed its notice of appeal.

■ As the EPA points out, there is a general rule that the filing of a notice of appeal divests the district court of jurisdiction over the matters appealed. *Lenard v. Argento*, 699 F.2d 874, 898 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *United States v. Bastanipour*, 697 F.2d 170, 173 (7th Cir.1982),

*cert. denied,* 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983); *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). There are exceptions for certain actions serving to preserve the status quo pending the appeal, *United States v. El-O-Pathic Pharmacy,* 192 F.2d 62, 79 (9th Cir.1951), or to assist the court of appeals in its determination. *United States v. Lafko,* 520 F.2d 622, 627 (3d Cir. 1975).[1]

■ We are persuaded that none of the exceptions to the rule is applicable here. Even if the district court was motivated by a desire to assist this court in its determination by stating additional conclusions of law on the basis of which this court might affirm the order, the assistance in this case came too late.[2] The filing of a notice of appeal sets the appellate clock running, and the parties and the clerk of the court become subject to deadlines imposed by the rules. The parties to an appeal are entitled to have a stable set of conclusions of law on which they can rely in preparing their briefs. The district court issued its supplemental memorandum opinion only a week before appellant EPA's opening brief was due, making it necessary for the EPA to prepare a supplemental brief and appendix and requiring the preparation of a supplemental record on appeal.

■ The district court stated at the hearing on the EPA's motion for stay pend-

1. The rule does not operate where there is a purported appeal from a non-appealable order. *United States v. Bastanipour,* 697 F.2d 170, 173 (7th Cir.1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983). Even though there is no judgment of record, the order of permanent injunction purports to be a final adjudication of the merits, and both parties founded appellate jurisdiction on 28 U.S.C. § 1291. We take it that they have waived the requirement of Rule 58 that a judgment be entered on a separate document. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384–85, 98 S.Ct. 1117, 1119–20, 55 L.Ed.2d 357 (1978).

We note also that the district court entered its final order before the EPA had filed an answer. Although such procedure is irregular, the EPA did not assign it as error, and our review of the

transcripts satisfies us that the EPA's position on the matters raised in the complaint was adequately presented to the district court and to Ced's. Because of the posture in which we find this matter and the finality of the district court's order, we do not view the absence of an answer in this case as a barrier to our review under 28 U.S.C. § 1291.

2. We note in passing that the supplementation of findings of fact is governed by Fed.R.Civ.P. 52(b), and the effect of a Rule 52(b) motion on the time for appeal is governed by Fed.R.App.P. 4(a)(4). Since the district court did not make any new or amended findings of fact in its supplementary memorandum opinion, Rule 52(b) does not apply.

ing appeal that because of the issues raised the court would treat it "in effect, as the equivalent of a motion to reconsider." Transcript of Hearing, July 22, 1983, at 5. Under Rule 4(a)(4) of the Federal Rules of Appellate Procedure, a timely motion under Rule 59 of the Federal Rules of Civil Procedure postpones the time for appeal until the entry of an order granting or denying the motion, and a notice of appeal· filed before the disposition of the motion has no effect. For purposes of Rule 4(a), a motion to reconsider is treated as a Rule 59(e) motion. *Lenard v. Argento,* 699 F.2d 874, 898 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). But even if we view the EPA's motion to stay as a motion to reconsider, and thus as equivalent to a Rule 59(e) motion, it was clearly out of time. Rule 59(e) sets a limit of ten days after entry of judgment, and the EPA's motion was filed later. Rule 4(a)(4), therefore, does not apply.

Accordingly, the district court's supplemental memorandum opinion of November 1, 1983 is vacated. We thus need not consider the EPA's assignments of error relating to that opinion.

### III

### A

■ We come now to the central issue in the case: whether the EPA had authority to carry out its inspection and copying of Ced's records. The EPA bases its assertion of authority over Ced's on the premise that Ced's is a "person ... subject to any requirement of the Act," within the mean-

ing of section 114(a)(1).[3] Specifically, the EPA asserts, Ced's is subject to section 203(a), which enumerates certain prohibitions. Ced's denies that it is subject to section 203(a) or to any other requirement of the Act.[4] We agree with the EPA.

Section 203(a) begins: "The following acts and *the causing thereof* are prohibited ...." 42 U.S.C. § 7522(a) (emphasis added). Subsection (3)(B) reads:

for any person engaged in the business of repairing, servicing, selling, leasing, or trading motor vehicles or motor vehicle engines, or who operates a fleet of motor vehicles, knowingly to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter following its sale and delivery to the ultimate purchaser.

*Id.* § 7522(a)(3)(B). Ced's, along with everyone else, is clearly prohibited by section 203(a) from causing any act described in subsection (3)(B). Compliance with this prohibition is a requirement of the Act; therefore, Ced's is subject to a requirement of the Act.

Ced's argues that it is not subject to section 203(a) because the manufacturing of Test Tubes does not constitute causing an act prohibited by section 203(a)(3)(B). Test Tubes, Ced's contends, have perfectly legal uses; not every use violates that prohibition. Test Tubes can be permanently installed by automobile owners on their own cars and by automobile repairmen temporarily for the purpose of verifying the need to replace the catalytic converter,

**3.** Section 114(a)(1), as codified at 42 U.S.C. § 7414(a)(1), reads in pertinent part as follows: (1) The Administrator may require any person who owns or operates any emission source or who is subject to any requirement of this chapter (other than a manufacturer subject to the provisions of section 7525(c) or 7542 of this title) with respect to a provision of subchapter II of this chapter to (A) establish and maintain such records ... as he may reasonably require ....

The parenthetical exception for certain manufacturers is irrelevant in the present context, and we shall not take further notice of it. In addition, we think that the phrase "with respect

to a provision of subchapter II of this chapter" has been misplaced in the Code. According to the technical amendment that directed its insertion, it should appear after "208" (7542 in the Code), i.e., within the parentheses. *See* Pub.L. 95–190, 91 Stat. 1400 (1977). We thus omit the phrase in our discussion.

**4.** Although the district court did not address itself to this issue in its memorandum opinion of July 1, Ced's raised it in proceedings before the district court, and both parties have discussed it in their briefs to this court. Accordingly, we consider it here.

all without violating any prohibition of the Act. The mere fact that Ced's manufactures and sells Test Tubes thus does not permit the inference that it is causing anyone to install a Test Tube unlawfully. This argument fails because it confuses being subject to the Act with being in violation of the Act. Ced's is subject to the Act because the Act prohibits Ced's from causing an act prohibited in section 203(a)(3)(B); whether Ced's has actually caused such a prohibited act, or whether there is even probable cause to think that Ced's has done so, is not pertinent.

Ced's argues further that the prohibition against causing an act prohibited in section 203(a)(3)(B) applies only to the persons identified in that section: any person engaged in the business of repairing, servicing, selling, leasing, or trading motor vehicles or motor vehicle engines, or who operates a fleet of motor vehicles. It is clear that the prohibition against knowingly removing antipollution devices or rendering them inoperative applies only to persons in the identified class. But the wording of the statute gives no reason to suppose that the prohibition against *causing* such a prohibited act applies only to persons in the same class. Congress could have written in such a restriction, but it did not, and we decline to supply it here.

Ced's argues finally that Congress has recognized that Ced's does not presently fall within the "causing" provision of section 203(a), because the proposed Clean Air Act Amendments of 1982 made Ced's expressly subject to section 203(a).[5] But the fact that proposed legislation introduces new prohibitions to which Ced's would be subject does not tend in the slightest to show that Ced's was in no way covered by the existing prohibitions.

There is support in the legislative history of the Clean Air Act Amendments of 1977 for the conclusion that Ced's is subject to the requirements of the Act. The 1977 amendments added to the class of persons covered by section 114(a) all persons subject to any requirement of the Act. *See infra* p. 1099. The Conference Report explained the effect of the revisions to section 114(a) as follows:

> [T]he conference agreement permits the Administrator to enter, inspect, test, or require testing on the premises [sic: of] any person other than a new motor vehicle manufacturer in order to carry out and enforce the requirements of this Act. This authority would apply to persons not previously covered by section 114, including but not limited to fuel additive manufacturers, independent garages, service stations, *auto parts makers*, and refineries. It may be used for the purpose of assuring compliance with any requirement of the Act (including, but not limited to, vapor recovery, transportation control, air quality maintenance plan measures, *anti-tampering prohibitions*, MMT restrictions) which does not pertain to new motor vehicle manufacturers.

Clean Air Conference Report (1977): Statement of Intent; Clarification of Select Provisions, *reprinted in* 123 Cong.Rec. 27070 (1977) (emphasis added). This passage shows that the Conference Committee regarded auto parts makers as among the persons covered by the revised section 114 and that the authority granted to the EPA could be used to assure compliance with anti-tampering prohibitions.

Accordingly, we hold that Ced's is subject to a requirement of the Clean Air Act,

---

5. According to the proposed amendment, section 203(a)(3) was to be supplemented with the following prohibition:

(C) for any person to sell, or offer to sell, any part or component intended for use with, or as part of, any motor vehicle, where such person knows, or reasonably should have known, that the principal use of such part or component will be to render inoperative or alter so as to cause a vehicle or engine to exceed applicable emission standards any part or component (including any replacement part or component) placed on or in a motor vehicle or motor vehicle engine for the purpose of controlling emissions in compliance with regulations under this title ....

House Subcomm. on Health and the Environment, 97th Cong., 2d Sess., Draft of Clean Air Act Reauthorization Amendments of 1982 at 81–82 (Comm.Print 1982).

so as to bring it within the class of persons subject to the authority granted to the EPA in section 114(a).

## B

In its memorandum opinion of July 1, the district court found that the EPA had no statutory authority under section 114(a) of the Act to inspect and copy Ced's business records, because it had never required Ced's to keep any records. "[T]he Administrator's authority to enter, inspect and copy in § 114(a)(2) applies only when the Administrator has required the person to establish and maintain records pursuant to its authority under § 114(a)(1)." Memorandum Opinion of July 1, 1983, at 4. The court reached this result by analysis of the language of section 114(a). It noted that section 114(a)(1) "authorizes the Administrator to require any person who is subject to any requirement of the Act to establish and maintain such records as the Administrator may require for the purpose of carrying out any provision of the Act." *Id.* It noted further that section 114(a)(2) "authorizes the Administrator to enter the premises of 'such persons' and have access to and copy such records."[6] *Id.* The court inferred that "such persons" refers to persons required to keep records under section 114(a)(1). From this, and from the fact that subsection 114(a)(1) and 114(a)(2) are connected by "and," the court concluded that the EPA has authority to inspect and copy documents only of persons it has previously required to establish and maintain records. *Id.*

The EPA contends that the district court erred in identifying the antecedent of "such persons" in section 114(a)(2)(A). It maintains that "such persons" refers to persons who own or operate any emission source or who are subject to any requirement of the

Act. Because Ced's is subject to a requirement of the Act, the EPA reasons, the EPA is authorized by section 114(a)(2)(A) to have a right of entry to Ced's premises and by section 114(a)(2)(B) to have access to and copy any of Ced's records.

There is neither any useful legislative history nor any published decision on this particular issue. Accordingly, our analysis will focus on the language of the statute. We think that section 114(a)(1) identifies a certain composite class of persons—those who own or operate emission sources or who are subject to any requirement of the Act—and authorizes the Administrator to require any person in that class to do any or all of the five things enumerated. We think that the phrase "such person" in section 114(a)(2)(A) means "any person in the class previously identified"—those who own or operate emission sources or who are subject to any requirement of the Act. This is the natural reading of the language. As it appears from the grammatical structure alone, the intent of section 114(a) is to give the EPA authority over a certain class of persons. Subsection (1) gives the EPA authority to require any person in the class to do certain things; subsection (2) gives it authority to do certain things to any person in the class. There are two subsections because two different kinds of authority are granted: the authority to require someone else to do something, and the authority to do something itself. But the class of persons over which the authority is granted is the same in both subsections—those persons who own or operate emission sources or who are subject to any requirement of the Act. There is nothing to indicate that the class over whom authority is granted in subsection (2) is limited to those over whom the EPA has exercised the authority grant-

---

**6.** The statute actually says "any records," not "such records." The full text of § 114(a)(2) reads:

(2) the Administrator or his authorized representative, upon presentation of his credentials—

(A) shall have a right of entry to, upon, or through any premises of such person or in which any records required to be maintained

under paragraph (1) of this section are located, and

(B) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1), and sample any emissions which such person is required to sample under paragraph (1).

ed in subsection (1). As we read section 114(a), subsection (1) and subsection (2) are independent and coordinate grants of authority over the same class of persons. Our grammatical analysis of section 114(a) thus inclines us to agree with the EPA's reading and to disagree with the reading of the district court.

Our interpretation gains additional support from a comparison of the language of section 114(a) before the 1977 amendments with the language after. Before 1977 section 114(a)(1) began as follows:

The Administrator may require the owner or operator of any emission source to (A) . . . .

42 U.S.C. § 1857c–9(a)(1) (1976). Section 114(a)(2)(A) gave the Administrator

a right of entry to, upon, or through any premises *in which an emission source is located* or in which any records required to be maintained under paragraph (1) of this section are located . . . .

*Id.* § 1857c–9(a)(2)(A) (emphasis added). It appears clear from this language that the right of entry applied to *any* emission source, not just those whose owners or operators had been required to do something under section 114(a)(1).

The 1977 Clean Air Act Amendments changed section 114(a)(1) to begin:

The Administrator may require any person who owns or operates any emission source or who is subject to any requirement of this Act . . . .

Pub.L. No. 95–95, 91 Stat. 776 (1977); Pub.L. 95–190, 91 Stat. 1400 (1977) (technical amendment) (codified as amended at 42 U.S.C. § 7414(a) (1982)). Section 114(a)(2)(A) was amended to read:

a right of entry to, upon, or through any premises *of such person* or in which any records required to be maintained under paragraph (1) of this section are located . . . .

*Id.* (emphasis added).

It seems evident to us that the effect of these changes was to expand the class of persons whom the Administrator can require to do certain things and to expand correspondingly the class of premises to which the Administrator has a right of entry, so as to include all the premises of all the persons in the expanded class. Before 1977, the Administrator could require the owners and operators of emission sources to do various things and had a right of entry to premises where any emission sources were located. After 1977, the Administrator can require the owners and operators of emission sources as well as any person who is subject to a requirement of the Act to do the same things, and he has a right of entry to the premises of such persons—the owners and operators of emission sources and those who are subject to a requirement of the Act. The substitution of "of such persons" for "in which an emission source is located" in section 114(a)(2)(A) provides no basis for imputing to Congress an intent to create a new restriction on the right of entry to include only the premises of persons whom the Administrator has required to do something under section 114(a)(1), where no such restriction was present before.

Accordingly, we hold that the phrase "such persons" in section 114(a)(2)(A) refers to any person who owns or operates any emission source or who is subject to any requirement of the Clean Air Act, whether or not the Administrator has exercised his authority under section 114(a)(1) with respect to the person in question. The district court's interpretation is therefore erroneous.

### C

■ Ced's argues finally that the EPA has not required Ced's to maintain any records, whereas section 114(a)(2)(B) permits the EPA to have access to and copy only records that it has previously required Ced's to maintain under section 114(a)(1).[7] We find no basis for this restrictive interpretation. We think that the plain language of the Act authorizes the EPA to copy any records of any person subject to

**7.** *See supra* note 4.

any requirement of the Act, whether or not it has previously required the person to maintain records under the authority granted in section 114(a)(1).

Section 114(a)(2)(B) authorizes three distinct actions. The Administrator may at reasonable times

—have access to and copy any records;

—inspect any monitoring equipment or method *required under paragraph (1);*

—sample any emissions which such person is *required to sample under paragraph (1).*

42 U.S.C. § 7414(a)(2)(B) (emphasis added). The latter two authorizations are expressly restricted to matters required under section 114(a)(1). There is no such restriction on the records that may be copied. When two items of a three-item coordinate list are made expressly subject to the same restriction but the third item is not, it is strong evidence of legislative intent not to apply the restriction to the third item.

Our conclusion is further supported by the language of the preceding subsection, which gives the Administrator "a right of entry to, upon, or through any premises of such person or in which *any records required to be maintained under paragraph (1) of this section* are located." 42 U.S.C. § 7414(a)(2)(A) (emphasis added). The inclusion of the restriction on "any records" in subsection (2)(A) is further evidence that the exclusion of it in subsection (2)(B) was intentional. If Congress had intended the records referred to in subsection (2)(B) to be confined to records required to be maintained under section 114(a)(1), it could easily have done so by appending to "any records" the phrase "required to be maintained under paragraph (1)," as it had done in the immediately preceding subsection, or by simply putting "such" in place of "any."

Ced's reading of section 114(a)(2)(B) not only conflicts with the plain language of the statute but also imposes on the EPA an arbitrary and meaningless requirement. In order to have access to and copy any records kept in the ordinary course of busi-

ness, the EPA would first have to direct the business to maintain them. The function served by a direction to maintain records that are already kept in the ordinary course of business is obscure. We will not interpret a statute to require a meaningless act as a condition of authority if a more plausible interpretation is available. We hold that Congress, in enacting section 114(a)(1), intended to give the EPA authority to require certain persons to keep certain records not already kept in the ordinary course of business, and in enacting section 114(a)(2)(B) intended to permit the EPA to have access to and copy *any* of the records of such persons, including those previously required to be kept under section 114(a)(1) and those already kept in the ordinary course of business.

### IV

■ In support of its grant of a permanent injunction against the EPA, the district court found that Ced's would suffer irreparable injury if the EPA carried out its announced intention of contacting Ced's customers. While the parties vigorously argued the issue of irreparable harm in their briefs, we need not reach that issue here. One of the requirements for a permanent injunction is that the plaintiff must have succeeded on the merits of its claim. *Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055, 1057 (E.D.Pa.1981); *Sierra Club v. Alexander,* 484 F.Supp. 455, 471 (N.D.N.Y.), *aff'd mem.,* 633 F.2d 206 (2d Cir.1980). In this case Ced's has not succeeded on the merits, because it has failed to establish any unlawful act on the part of the EPA. Accordingly, the order of the district court granting a permanent injunction against the EPA is reversed and the case is remanded to the district court with instructions to dissolve the injunction and dismiss the complaint.

Reversed And Remanded.