**John T. PATZER, Plaintiff-Appellant,**

v.

**BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM and State Department of Administration, Defendants-Appellees.**

Nos. 84–1267, 84–1411.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 16, 1984.

Decided June 4, 1985.

As Amended July 2, 1985.

Craig Higgason, Lawton & Cates, Madison, Wis., for plaintiff-appellant.

John R. Sweeney, Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

In this consolidated appeal of two orders of the district court we must decide whether an action for back pay under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., is barred by res judicata when the plaintiff earlier obtained administrative relief (not including back pay) which was affirmed on appeal to state court. We are also asked to decide whether plaintiff is entitled to attorneys' fees under Title VII

for successfully prosecuting his discrimination claim in state proceedings. We hold that his action for back pay is not barred by res judicata but do not reach the issue of attorneys' fees, because the district court was without jurisdiction to enter an order.

## I

In 1972 the plaintiff John T. Patzer, a white male, applied for a position as apprentice painter at the University of Wisconsin. His application was rejected on January 8, 1973, because he was not a woman or a member of any of six specified minority groups. The Director of the Bureau of Personnel had authorized the University to impose such a restriction, as he was permitted to do by a provision of the Wisconsin Administrative Code known as "Pers 27."

On January 11, 1973, Patzer filed simultaneous complaints with the Equal Employment Opportunities Commission (EEOC) and the Wisconsin Department of Industry, Labor and Human Relations (DILHR), charging that he had been discriminated against because of his sex and race. The Equal Rights Division of DILHR issued a finding of probable cause, and on February 22, 1974, a hearing examiner found in his favor. The DILHR Commissioners affirmed the hearing examiner's decision on October 31, 1974. The respondents were ordered to examine Patzer and hire him for the next available apprentice painter vacancy if his test score entitled him to be certified. He was examined and certified, but he was not and never has been offered employment.[1]

At the time Patzer filed his complaint, Wisconsin law did not authorize an award of back pay as a remedy for unlawful discrimination. Effective June 16, 1974, after the decision of the hearing examiner but before the affirmance by the Commissioners, Wisconsin law was amended to authorize an award of back pay.

The respondents sought review of the Commissioners' ruling in the state circuit

---

1. At oral argument we were told that the University of Wisconsin has had no further vacancies for apprentice painters and has since eliminated that position.

court, and on May 17, 1976, the circuit court affirmed, holding that Pers 27 violated the Wisconsin constitution, as administrative action beyond the powers delegated by the legislature. Undaunted, the respondents appealed to the Wisconsin Supreme Court, which affirmed on the same grounds. *State (Department of Administration) v. Department of Industry, Labor and Human Relations,* 77 Wis.2d 126, 252 N.W.2d 353 (1977).

In June 1978 Patzer filed a complaint in state court alleging that he had not been offered a position in accordance with the DILHR decision and asking for $25,000 in damages for lost wages and fringe benefits and for expenses incurred in finding other employment. The court dismissed the suit for want of personal jurisdiction on April 24, 1979, because the suit was against the state and Patzer had failed to comply with Wisconsin's notice of claim statute, which requires the claimant to serve written notice of the claim on the attorney general within 120 days (then 90 days) of the event causing the injury. Wis.Stat.Ann. § 893.82 (West 1983). Patzer did not appeal.

■ Patzer now turned to the EEOC, where his claim had lain dormant. The EEOC's efforts at conciliation and settlement proved fruitless, and Patzer requested and received a right-to-sue letter in 1983. He then filed this action in district court, seeking back pay, restoration of employment, restoration of all fringe benefits, and compensatory and punitive damages of $100,000,[2] plus attorneys' fees and costs.

The district court dismissed the claim brought under 42 U.S.C. § 1983 as time-barred. Treating the remaining Title VII claim, the court rejected the defense of laches, finding that although the ten-year delay was unreasonable, it was nevertheless excusable, and defendants had not shown prejudice. But on January 19, 1984, the court entered summary judgment for the defendants, holding that Patzer's Title VII claim was barred by res judicata as a result of the dismissal of his state court suit in 1979. *Patzer v. Board of Regents,* 577 F.Supp. 1553 (W.D.Wis.1984). Patzer filed his notice of appeal on February 15, 1984; that appeal is No. 84-1267, 763 F.2d 851.

On February 3, 1984, Patzer filed a motion in the district court seeking attorneys' fees in accordance with *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), for successfully prosecuting his state administrative claim. On March 8, 1984, the court denied the motion on the grounds that Patzer could have requested attorneys' fees in his state action; the dismissal of that action therefore precludes him from seeking attorneys' fees now. Patzer filed his notice of appeal from that order on March 13, 1984; that appeal is No. 84-1411, 763 F.2d 851.

## II

### A. The Action for Back Pay (No. 84-1267)

1. The Holding of the District Court

The district court based its holding on *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), in which the Supreme Court held that Title VII did not repeal the requirement of 28 U.S.C. § 1738 that federal courts afford the same full faith and credit to state court judgments that would apply in the state's own courts. The district court reasoned that because Patzer could have joined his Title VII claim to his state court action, the dismissal of that action would bar him under Wisconsin principles of res judicata from prosecuting his Title VII claim in state court now. Hence, the court concluded, *Kremer* and § 1738 bar him from prosecuting his Title VII claim in federal court also.

■ The flaw in the district court's reasoning lies in its assumption that the courts of Wisconsin would give preclusive effect to the dismissal of Patzer's action by the state court in 1979, so as to bar the

---

**2.** We note in passing that Title VII authorizes any equitable remedies the court deems appropriate, including back pay, but not compensatory or punitive damages. *See* 42 U.S.C. § 2000e-5(g); *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363-64 (11th Cir.1982) (citing many cases).

subsequent litigation of a Title VII claim in state court. Under Wisconsin law only a final judgment on the merits has preclusive effect. *Krueger v. Winters*, 37 Wis.2d 204, 211, 155 N.W.2d 1, 5 (1967). The 1979 dismissal was a final judgment, but it was not on the merits. Patzer's suit was dismissed for want of personal jurisdiction because he failed to comply with the notice of claim statute, a condition precedent to obtaining personal jurisdiction over state defendants.[3] Wisconsin law would classify this dismissal as an involuntary nonsuit, which does not have preclusive effect. *Id.* Accordingly, we must reject the reasoning of the district court.

### 2. The Effect of the 1976 State Court Judgment

This does not end our inquiry, however, because there was another state court judgment: the 1976 judgment affirming the administrative decision in favor of Patzer. Under *Kremer* and 28 U.S.C. § 1738, we must determine whether the courts of Wisconsin would treat the 1976 judgment as a bar to a later Title VII suit.[4] If they would, then so must the federal courts.

Under Wisconsin law of res judicata, a final judgment on the merits by a court of competent jurisdiction is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings. *DePratt v. West Bend Mutual Insurance Co.*, 113 Wis.2d 306, 311, 334 N.W.2d 883, 885 (1983); *Gohr v. Beranek*, 266 Wis. 605, 609–10, 64 N.W.2d 246, 249 (1954). In order for the first action to bar the current action, there must be an identity of parties and an identity of causes of action or claims in the two cases. *DePratt*, 113 Wis.2d at 311, 334 N.W.2d at 885. Wisconsin has adopted the transactional view of

claim or cause of action set forth in *Restatement (Second) of Judgments* § 24 comment a (1982). *Id.* at 311–12, 334 N.W.2d at 886. The claim is coterminous with the transaction, regardless of the number of substantive theories or variant forms of relief flowing from these theories; the transaction is the basis of the litigative unit or entity which may not be split. *Id.* at 311, 334 N.W.2d at 886 (quoting *Restatement*). A plaintiff's second claim is barred even though he or she is prepared in the second action to seek remedies or forms of relief not demanded in the first action. *Id.* at 312, 334 N.W.2d at 886 (quoting *Restatement*).

If a Wisconsin court applied these principles straight-forwardly to a Title VII suit by Patzer, there is no doubt that the suit would be barred. It is clear that the Title VII claim arises out of the same "transaction" as the administrative complaint; they are therefore the same claim. The Title VII suit would simply be another theory of recovery, in search of additional remedies.

Patzer argues that his Title VII claim is not a matter that might have been litigated in the state court proceeding, because he could not have introduced it in the administrative proceeding or in the state court review; consequently, it is not barred. The fallacy in this argument is that the claim he makes in his Title VII suit is identical for purposes of res judicata to the claim he made in the administrative proceedings; that claim has therefore already been litigated. The "might have been litigated" provision comes into play only for claims or causes of action distinct from the one actually litigated.

Patzer tries to avoid this result by distinguishing his claim of liability from his claim for back pay. He contends that only the former and not the latter was actually litigated. But the "claim of liability" is

---

4. Whether state courts have jurisdiction over Title VII suits is an unsettled question. *Compare Bennun v. Board of Governors*, 413 F.Supp. 1274, 1279–80 (D.N.J.1976) (jurisdiction in state and federal courts) *with Dickenson v. Chrysler Corp.*, 456 F.Supp. 43, 47–48 (E.D.Mich.1978) (federal jurisdiction is exclusive). We need not reach that question here; we shall simply as-

sume arguendo that state courts have jurisdiction.

3. This jurisdictional defect was apparently incurable. In any event, the six-year time limit for bringing an action ran out for Patzer on January 8, 1979, before the court dismissed his suit. *See Yanta v. Montgomery Ward & Co.*, 66 Wis.2d 53, 66, 224 N.W.2d 389, 396 (1974).

just his claim, the same in the administrative action and in the Title VII suit. His "claim for back pay" is not a claim at all, for purposes of res judicata; it is but a request for one form of relief. It is clear under Wisconsin law that one cannot relitigate the same claim in order to obtain additional relief. *DePratt v. West Bend Mutual Insurance Co.*, 113 Wis.2d 306, 311–12, 334 N.W.2d 883, 886 (1983).

■ Patzer also argues that because he won in the state proceedings, the federal court should give full faith and credit to the state court judgment in his Title VII suit and on that basis enter summary judgment in his favor. He contends, in effect, that the state court ruling on the issue of liability collaterally estops the defendants to deny liability in the Title VII suit, but because the state court made no ruling as to back pay, that issue is properly before the federal court. It is true that if an issue is determined unfavorably to a party in an action that reaches final judgment on the merits, that party is bound by the prior determination in subsequent litigation between the same parties to which that issue is material. *See, e.g., State ex rel. Flowers v. Department of Health and Social Services*, 81 Wis.2d 376, 387, 260 N.W.2d 727, 734 (1978). But subsequent litigation can arise only if it is not barred by res judicata. In this case, what Patzer calls the "issue of liability" is nothing but the question whether his claim of discrimination is meritorious. That question was answered in the affirmative by the state court, and that judgment bars *Patzer* from relitigating the same question in a second lawsuit. It does not avail for Patzer to argue that he does not want to relitigate that question but only to litigate the issue of back pay for the first time. The federal court cannot get to the issue of back pay without adjudicating his claim of liability, and res judicata bars the court from making that adjudication. It does not matter that Patzer does not seek adversary proceedings on the claim of liability; even the entry of summary judgment on the basis of a prior state court judgment would be an adjudication.

We conclude that under the Wisconsin law of res judicata, Patzer's Title VII suit would be barred by the 1976 judgment affirming the administrative decision in his favor.

3. Exception to Rule of Res Judicata

■ We are persuaded that the courts of Wisconsin would recognize an exception to the general rule of res judicata on the peculiar facts of this case. Wisconsin law does not treat res judicata as an ironclad rule which must be implacably applied whenever its literal requirements are met, regardless of any countervailing considerations. *See Wendland v. Wendland*, 29 Wis.2d 145, 157, 138 N.W.2d 185, 191–92 (1965) (making exception in child custody case); *McCourt v. Algiers*, 4 Wis.2d 607, 611, 91 N.W.2d 194, 196 (1958) (doctrine of res judicata based on proposition that repeated litigation of identical issues is undesirable where not necessary to prevent unfairness). While cases admitting exceptions to the rule are rare, we believe that the Supreme Court of Wisconsin would not turn a deaf ear to argument that in a particular sort of case the policy reasons for allowing an exception override the policy reasons for applying the general rule.

Title VII embodies a deliberate policy of giving state agencies the first opportunity to resolve complaints of discrimination. An aggrieved person may not even file a charge with the EEOC until sixty days after proceedings had been commenced under state law (unless the proceedings are terminated earlier). 42 U.S.C. § 2000e–5(c); *see Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). If a member of the EEOC files a charge, the Commission may take no action on it without notifying appropriate state officials and, on their request, allowing them a reasonable time (at least sixty days) to act. 42 U.S.C. § 2000e–5(d).

Consistently with this policy of referral and deferral to state agencies, proceedings under Title VII have been characterized as supplementary to available state remedies for employment discrimination. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980); *Alexander v. Gardner-Denver Co.*,

415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974).

> Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt *or complete* relief.

*New York Gaslight Club,* 447 U.S. at 65, 100 S.Ct., at 2031 (emphasis added).

> Title VII explicitly leaves the States free, and indeed encourages them to exercise their regulatory power over discriminatory employment practices. Title VII merely provides a supplemental right to sue in federal court *if satisfactory relief is not obtained in state forums.*

*Id.* at 67, 100 S.Ct., at 2032 (emphasis added).

> [I]f state proceedings result in an injunction in favor of the complainant, *but no award of backpay because state law does not authorize it,* the complainant may proceed in federal court to "supplement" the state remedy.

*Id.* at 68, 100 S.Ct. at 2033 (emphasis added).

 Final adjudicative decisions of administrative agencies are often res judicata as to the claims decided. *See, e.g., Senior Accountants, Analysts and Appraisers Ass'n v. City of Detroit,* 399 Mich. 449, 249 N.W.2d 121, 124–25 (1976) (it is established law in Michigan that doc-

trines of res judicata and collateral estoppel apply to administrative determinations which are adjudicatory in nature, where a method of appeal is provided, and where it is clear that it was the legislative intention to make the determination final in the absence of an appeal).[5] We are convinced, however, that the courts of Wisconsin would not treat an unappealed final decision of DILHR in favor of the complainant as barring a subsequent Title VII suit.[6] While it is an unsettled question whether state courts have jurisdiction over Title VII actions, *see supra* note 4, there is no doubt that state administrative agencies have no jurisdiction.[7] In general, res judicata does not operate to bar matters that were not raised before the administrative agency and over which it did not have jurisdiction. *E.g., McKee v. County of Ramsey,* 310 Minn. 192, 245 N.W.2d 460, 462 (1976).

If an unappealed state administrative decision on an employment discrimination claim were res judicata as to a Title VII action based on the same facts, then the function of Title VII as a supplement to state remedies would be frustrated. A Title VII action in state court could succeed only if it proceeded to final judgment before the state administrative agency rendered a final decision. Since the statute requires that the state agency be given a substantial head start, a Title VII judg-

5. We have found no Wisconsin authority on this point, but we are confident that Wisconsin would follow the generally accepted rule. *See also United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Cunegin v. Zayre Dept. Store,* 437 F.Supp. 100, 103 (E.D.Wis.1977); *Jeffries v. Glacier State Telephone Co.,* 604 P.2d 4, 8–9 (Alaska 1979).

6. In *Yanta v. Montgomery Ward & Co.,* 66 Wis.2d 53, 224 N.W.2d 389 (1974), the Wisconsin Supreme Court permitted the plaintiff to proceed with an action for back pay in state court, even though DILHR had previously ruled in her favor on the same state employment discrimination claim and had awarded her only reinstatement. Because the amendment to the Wisconsin Fair Employment Act that authorized DILHR to award back pay became effective only after the administrative proceeding had concluded, DILHR *could not* have awarded her back pay. The court held that the legislature intended for the victims of discrimination to recover lost wages, even when the discrimina-

tion occurred before the statute was changed. The court did not expressly treat the question whether the prior proceeding before DILHR barred the plaintiff's action, but we think it sufficiently evident that it would have found no bar.

7. In the statutory scheme a charge under Title VII is filed first with the EEOC. 42 U.S.C. § 2000e–5(b). In states having employment discrimination laws, the EEOC is required to stay its hand until the state authority has had an opportunity to resolve the problem under state law. § 2000e–5(c), (d). The Title VII claim becomes active only at the end of the deferral period, when the EEOC is required to act. § 2000e–5(f)(1). The EEOC is empowered to bring a civil action, and if it chooses not to do so, the aggrieved person may bring a civil action on receipt of a right-to-sue letter. *Id.* But a civil action is a judicial and not an administrative proceeding. There is thus no provision in the enforcement scheme of Title VII for bringing a Title VII claim before a state administrative body.

ment would be virtually impossible to obtain in state court. We are confident that the courts of Wisconsin would not apply its rules of res judicata so as to defeat the purpose of Title VII in this way.

■ In general, a judgment affirming an administrative decision is res judicata as to the claims adjudicated, no less than a judgment entered after a trial on the merits. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480 n. 21, 102 S.Ct. 1883, 1896 n. 21, 72 L.Ed.2d 262 (1982). But to treat a judgment affirming a decision of DILHR in favor of the complainant as a bar to a Title VII action based on the same facts would frustrate the supplementary purpose of Title VII as surely as treating the administrative decision itself as a bar.[8] In addition, it would create the following anomaly: a complainant who prevailed before DILHR without suffering an appeal to state court would be entitled to seek supplementary Title VII remedies in state court, but one who prevailed before DILHR and prevailed again on appeal in state court could not. We think it would appear to the Wisconsin Supreme Court wholly arbitrary to treat the state court affirmance of an administrative decision favorable to the complainant as an absolute bar to his cause of action under Title VII, when a similarly situated complainant whose case was not submitted to state court review by the losing respondent is free to litigate his claim.

The doctrine of res judicata was developed judicially to prevent the oppression of defendants and the burdening of the courts with multiple lawsuits by the same plaintiff based on the same set of facts. These are important considerations. But we are convinced that the Supreme Court of Wisconsin would find them to be overridden in the narrow circumstances of this case. While even an adjudged wrongdoer has a right to eventual repose, it is national policy that Title VII remedies be available to supplement state remedies for employment discrimination. We do not believe that the Supreme Court of Wisconsin would deny effect to that policy because of the fortuity that the wrongdoer took an appeal and lost a second time.

■ We accordingly hold that under Wisconsin law the 1976 state court judgment in favor of Patzer does not bar Patzer from bringing a Title VII action for supplementary remedies in state court.[9] Consequently, he is not barred from bringing such an action in federal court.

**B. The Motion for Attorneys' Fees (No. 84–1411)**

■ The usual sort of motion for attorneys' fees in a civil rights action seeks attorneys' fees as the prevailing party in the instant case—the case in which the court has just entered judgment in the movant's favor. But Patzer's motion is not the usual sort. While Title VII does authorize an award of attorneys' fees to the prevailing party in a Title VII suit, 42 U.S.C. § 2000e–5(k), Patzer had no colorable basis for filing such a motion, since he did not prevail. His motion rather sought attorneys' fees as the prevailing party in the earlier state proceedings, under the authority of *New York Gaslight Club v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). In *Gaslight* the Supreme Court held that a Title VII suit may be brought in federal court to obtain an award of attorneys' fees for successful legal work done in state and local proceedings to which the complainant was referred pursuant to the provisions of Title VII. *Id.* at 71, 100 S.Ct. at 2034. It is clear from *Gaslight* that such attorneys' fees must be sought within the Title VII suit itself rather than by motion afterwards. This makes perfectly good sense. Patzer knew when he filed his Title VII suit that he had prevailed in the earlier state proceedings and he knew the amount of the attorneys' fees. Under such circumstances there was no reason to delay the request for

---

8. It might be different if the complainant could somehow bring a Title VII claim in review proceedings in state court. But he cannot; review of administrative decisions is confined to the record. Wis.Stat.Ann. § 227.20 (West 1982).

9. We do not intend to suggest that the courts of Wisconsin would accord no preclusive effect whatever to the 1976 judgment. It is entirely possible that the judgment estops the defendants to relitigate the issue of liability. This question is not now before us, and we leave it for the district court to decide on remand.

those fees until after judgment in the Title VII suit. Indeed, there was reason not to delay: the defendant is entitled to know all the relief sought before judgment. In general, a plaintiff cannot stand by until he has secured a judgment in his favor and then apply to the court by motion for additional relief that he could have sought within the main action. In this case Patzer had even less justification for his motion for attorneys' fees: in effect, he was seeking additional relief in a suit that he lost. Thus it would appear that the district court properly dismissed the motion as res judicata, not by reason of the 1979 state court judgment but by reason of the district court's own judgment against Patzer. Of course, we are here reversing the district court's judgment as erroneous, but as long as it remained unreversed, it barred Patzer from seeking additional Title VII relief in the same cause. If this were the correct analysis, then the proper course for us would be to reverse the dismissal of the motion and remand. Since we are reversing the judgment against Patzer, he is no longer barred from seeking attorneys' fees for his success in the state court proceedings.

■ This analysis would be correct but for one supervening fact: Patzer filed a notice of appeal after filing his motion for attorneys' fees but before the district court ruled on the motion. The timely filing of a notice of appeal of a final judgment divests the district court of jurisdiction over the case appealed. *Lenard v. Argento,* 699 F.2d 874, 898 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *United States v. Bastanipour,* 697 F.2d 170, 173 (7th Cir.1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983). There are exceptions for certain actions serving to preserve the status quo pending the appeal, *United States v. El-O-Pathic Pharmacy,* 192 F.2d 62, 79 (9th Cir.1951), or to assist the court of appeals in its determination. *United States v. Lafko,* 520 F.2d 622, 627 (3d Cir.1975). The rule does not operate when there is a purported appeal from a non-appealable order. *Bastanipour,* 697 F.2d at 173.

**10.** Circuit Rule 18 shall apply.

■ If Patzer had been seeking attorneys' fees as the prevailing party in the Title VII suit, then we are satisfied that the district court would have retained jurisdiction to rule on the motion. The merits and attorneys' fees are separate proceedings, and the notice of appeal from the judgment on the merits does not affect the court's power to act on the petition for attorneys' fees. *See White v. New Hampshire Department of Social Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *Exchange National Bank v. Daniels,* 763 F.2d 286 (7th Cir.1985). But Patzer's motion, as we have noted, was different: it sought attorneys' fees for an earlier success. It thus falls within none of the exceptions to the general rule. Therefore, the district court was without jurisdiction to rule on the merits of the motion, and its order was void *ab initio.*

### III

For the reasons stated above, in No. 84–1267 the order of the district court is reversed and the case is remanded for further proceedings.[10] In No. 84–1411 the order of the district court is vacated. Costs in both appeals are taxed to the appellees.

SO ORDERED.