362 S.E.2d 924

**Laura KERNS, and the West Virginia Human Rights Commission**

v.

**Neil BUCKLEW, President, West Virginia University, and the West Virginia Board of Regents.**

**No. 17493.**

Supreme Court of Appeals of West Virginia.

Aug. 17, 1987.

For opinion see: 178 W.Va. 68, 357 S.E.2d 750.

MILLER, Justice, dissenting:

Although I sympathize with the majority's effort to achieve an equitable result in what is a difficult case, I am unable to accept its theory.

The attempt to utilize the Supremacy Clause of the United States Constitution (art. VI, cl. 2), by holding that Title VII overrides our State's constitutional immunity found in Article VI, § 35 of our Constitution, misconceives the law surrounding Title VII. This argument was considered and rejected in *California Federal Savings and Loan Ass'n v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613, 624–25 (1987), where the Supreme Court stated:

"Section 1104 of Title XI, applicable to all titles of the Civil Rights Act, establishes the following standard for pre-emption:

'Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be con-

strued as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.' § 2000h–4.

"Accordingly, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of Title VII; these two sections provide a 'reliable indicium of congressional intent with respect to state authority' to regulate employment practice. *Malone v. White Motor Corp., supra,* 435 U.S. [497] at 505, 98 S.Ct. [1185] at 1190 [55 L.Ed.2d 443 (1978)].

"Sections 708 and 1104 severely limit Title VII's pre-emptive effect. Instead of pre-empting state fair employment laws, § 708 ' "simply left them where they were before the enactment of title VII." ' *Shaw v. Delta Air Lines, Inc., supra,* 463 U.S., at 103, n. 24, 103 S.Ct., at 2903, n. 24 (quoting *Pervel Industries, Inc. v. Connecticut Commission on Human Rights and Opportunities,* 468 F.Supp. 490, 493 (Conn.1978), affirmance order, 603 F.2d 214 (CA2 1979), cert. denied, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980). Similarly, § 1104 was intended primarily to 'assert the intention of Congress to preserve existing civil rights laws.' 110 Cong.Rec. 2788 (1964) (remarks of Rep. Meader). See also H.R.Rep. No. 914, 88th Cong., 1st Sess., 59 (1963), U.S.Code Cong. & Admin.News 1964, pp. 2355 (additional views of Rep. Meader). The narrow scope of pre-emption available under §§ 708 and 1104 reflects the importance Congress attached to state antidiscrimination laws in achieving Title VII's goal of equal employment opportunity." [1] (Footnotes omitted.)

---

1. Earlier in Note 23 of *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 101, 103 S.Ct. 2890, 2902, 77 L.Ed.2d 490, 503 (1983), the Supreme Court elaborated on the practical reasons why pre-emption under Title VII of state human rights law was not favored:

"Pre-emption of this sort not only would eliminate a forum for resolving disputes that, in certain situations, may be more convenient than the EEOC, but also would substantially increase the EEOC's workload. Because the

EEOC would be unable to refer claims to state agencies for initial processing, those claims that would have been settled at the state level would require the EEOC's attention. Claims that would not have been settled at the state level, but would have produced an administrative record, would come to the EEOC without such a record. The EEOC's options for coping with this added burden, barring discoveries of reserves in the agency budget, would be to devote less time to each individu-

It appears that the majority may have misconceived the role played by state human rights agencies under Title VII.[2]  In order to obtain the benefits of the federal statute, the complainant must initially file with the EEOC.  At that point the EEOC, if the discrimination occurs within a state, must defer to that state's human rights commission or its relevant counterpart, if it has one, for sixty days.  This does not mean that the EEOC loses jurisdiction.[3]  The Supreme Court in *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 469, 102 S.Ct. 1883, 1891, 72 L.Ed.2d 262, 272 (1982), explained this initial phase:

> "Whenever an incident of alleged employment discrimination occurs in a State or locality which by law prohibits such discrimination and which has established an 'authority to grant or seek relief from such [discrimination] or to institute criminal proceedings with respect thereto,' no charge of discrimination may be actively processed by the EEOC until the state remedy has been invoked and at least 60 days have passed, or the state proceedings have terminated.  § 706(c), 42 U.S.C. § 2000e-5(c) [42 U.S.C.S. § 2000e-5(c) ].  Only after providing the appropriate state agency an opportunity to resolve the complaint may an aggrieved individual press his complaint before the EEOC.  In its investigation to determine whether there is reasonable cause to believe that the charge of employment discrimination is true, the Commission is

required to 'accord substantial weight to final findings and orders made by State and local authorities in proceedings commenced under State or local law' pursuant to the limited deferral provisions of § 706, but is not bound by such findings."

The primary issue in *Kremer* was what preclusive effect should be given to a state agency's finding of discrimination upon a referral from the EEOC on subsequent litigation in a federal district court.  The Court in *Kremer* determined that where there had been a full and fair opportunity to develop the claim in the state system, and judicial review by a state court, then its finding would be given preclusive effect in a federal district court on the same discrimination issue.  Where state administrative rulings are unreviewed, they are entitled to "substantial weight" by EEOC, but are not accorded preclusive effect in a federal district court.  *University of Tennessee v. Elliot*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

What the majority fails to understand is that *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), does not hold that where relief under a state human rights statute does not duplicate that offered under Title VII, the relief will be engrafted on the state act under the Supremacy Clause.  Rather, the

---

al case or to accept longer delays in handling cases.  The inevitable result of complete preemption, in short, would be less effective enforcement of Title VII."

**2.**  Title VII, like most social legislation of recent decades, is tied to the Commerce Clause, U.S. Const. art I, § 8, cl. 3, and is therefore limited in its coverage to businesses and industries which affect interstate commerce.  Moreover, Title VII itself further curtails coverage by defining employers subject to its regulations as persons "who [have] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]"  42 U.S.C. § 2000e(b).  It is apparent, then, that a substantial number of small businesses are beyond the reach of Title VII, either due to the intrastate nature of their activities or the size of their workforces.  These businesses are, however, subject to state human rights acts,

and Congress intended such acts to retain their full vitality so as to regulate business practices falling outside of Title VII protections.

**3.**  As the Supreme Court pointed out in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723, 734 (1980):

> "Upon termination of the state proceedings or expiration of the 60-day deferral period, whichever comes first, the EEOC automatically assumes concurrent jurisdiction of the complaint."

The Supreme Court had earlier in *Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679, 684 (1972), expressly approved the deferral practice and the right of the EEOC after the sixty-day deferral period to "hold a complaint in 'suspended animation' automatically filing it upon the termination of the state proceedings."

holding in *Carey* is that if on deferral to the state agency its relief is inadequate when compared to the relief accorded under Title VII, then the complainant may obtain Title VII relief in a federal court.

In *Carey*, the complainant, having initially filed with EEOC, was referred to the New York Human Rights Commission. Upon a finding of discrimination he was awarded back pay and the employer was required to offer her a job. The New York statute did not authorize an award of attorneys' fees as did Title VII. Consequently, she sought her additional federal remedy through the EEOC, where the claim had been initially filed, and obtained a right to sue in the federal court. The Supreme Court recognized that this could be done, stating:

> "It is clear from this scheme of interrelated and complementary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief." 447 U.S. at 65, 100 S.Ct. at 2031–32, 64 L.Ed.2d at 735.

The important teaching of *Carey* is that relief is available in the federal forum if the state remedy is inadequate as to when contrasted to those available under Title VII.[4] Here the petitioner never initially elected to pursue her Title VII claim. This is, of course, critical to the preservation of Title VII relief.

Had the petitioner initially filed an EEOC claim to preserve her Title VII remedies, this case would be analogous to *Patzer v. Board of Regents of University of Wisconsin System*, 763 F.2d 851 (7th Cir.1985). In

*Patzer* the claimant filed with the EEOC and was referred to the Wisconsin Department of Industry, Labor and Human Relations which found discrimination, but did not award back pay. On review the claimant sought back pay in the Wisconsin state courts, but this was denied. The denial was based on the fact that a state agency was involved. The court found that the claimant had not complied with a state statute requiring a notice of claim against the state to be served on the attorney general. Subsequently, Patzer obtained a right to sue letter from the EEOC and brought suit in the federal court. The federal court of appeals ultimately upheld his right to obtain Title VII back pay relief under *Carey*.

Every state court which has been confronted with the issue of whether it may entertain a Title VII claim where there has been no filing before the EEOC has concluded it cannot. The New Jersey Supreme Court in *Peper v. Princeton University Board of Trustees*, 77 N.J. 55, 389 A.2d 465, 475 (1978), explained in some detail the reasons why this could not be done:

> "To permit Peper to file a suit under Title VII without first filing a charge with the EEOC would give state courts greater jurisdiction than federal courts in enforcing the concededly federal rights secured by that statute. In *Alexander v. Gardner–Denver Company*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147, 157 (1974), the Supreme Court observed that one of the jurisdictional prerequisites under Title VII which an individual must satisfy before being entitled to institute a lawsuit is the filing of a timely charge of employment discrimination with the EEOC. . . .

**4.** Since *Carey* a number of federal courts have given supplemental Title VII relief where the state agency had on a deferral from EEOC given partial relief under its human rights statute. E.g., *Patzer v. Board of Regents of University of Wisconsin System*, 763 F.2d 851 (7th Cir.1985); *Buckhalter v. Pepsi–Cola General Bottlers, Inc.*, 768 F.2d 842 (7th Cir.1985); *McNasby v. Crown, Cork & Seal Co., Inc.*, 656 F.Supp. 206, (E.D. Pa.1987). Even before *Carey* the Fifth Circuit Court of Appeals in *White v. Dallas Independent*

*School District*, 581 F.2d 556, 561 (5th Cir.1978), stated:

> "Thus the availability of a criminal misdemeanor action under state law and procedure does not deprive a litigant of the opportunity to vindicate back pay and reinstatement claims in federal court once the deferral period has ended. Section 706(b) requires that the states be given an opportunity to handle the matter; it does not require a state to 'clone' federal remedies."

"More importantly, to permit a plaintiff to file suit under Title VII and to appear before any judicial tribunal without first resorting to the specially created administrative remedy of proceedings before the EEOC would run directly counter to the intent of Congress.

'It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party sought to be sued. 42 U.S.C. Sec. 2000e–5(e). This provision serves two important purposes. First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law.' [*Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 719 (7th Cir.1969).]"

See also, *Bernard v. L.H.H.R.A. Southwest Charity Hosp. of Lafayette*, 358 So.2d 653 (La.App.1978); *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 470 N.Y.S.2d 599 (1984); *Kurtz v. City of Waukesha*, 91 Wis.2d 103, 280 N.W.2d 757 (1979).

What has happened in this case is that the majority has granted full Title VII relief to the petitioner even though she never sought such relief in the proceedings below. Also lurking in the shadow of the majority opinion is the unanswered question of how a state court can accord Title VII relief, even if one were to assume that the petitioner had initially invoked Title VII relief by filing a complaint with the EEOC. The only two federal courts of appeal that have addressed this issue have concluded that there is no concurrent jurisdiction in state courts to hear Title VII cases. E.g., *Bradshaw v. General Motors Corp.*, 805 F.2d 110 (3rd Cir.1986); *Valenzuela v. Kraft, Inc.*, 739 F.2d 434 (9th Cir.1984).[5] Consequently, I am at a loss to understand how the majority can usurp a federal court's jurisdiction to award Title VII relief.

To briefly recapitulate, it seems clear to me that the United States Supreme Court has concluded that Congress in enacting Title VII did not intend through the Supremacy Clause to supplant or abolish state human rights statutes. As *Carey* and a number of lower federal cases recognize, the assertion of an EEOC claim enables the complainant to obtain state relief. Where the state remedy is inadequate, then the complainant is free to pursue additional Title VII relief in the federal courts.

Here it is clear that if the petitioner had properly sought Title VII relief through the EEOC, deferral to our Human Rights Commission would have immediately occurred. Its finding of discrimination and subsequent monetary award would then have enabled petitioner to seek satisfaction of the award in the federal district court by obtaining a right to sue letter from the EEOC. It is also obvious under *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), as the majority acknowledges, that the state's claim of constitutional immunity as to back pay and attorney fees could not prevail in that forum.

My departure from the majority is bottomed on the fact that the petitioner never asserted a Title VII claim. For this reason and under the foregoing law, I believe the majority was in error in holding that she was entitled to Title VII relief.

---

5. The United States Supreme Court has declined to address this issue. *See,* Note 20, *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262, 279 (1982).