**Gale NESTOR, Plaintiff–Appellant,**

v.

**PRATT & WHITNEY, Defendant–Appellee.**

**Docket No. 05–1754–cv.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 22, 2005.

Decided: Oct. 4, 2006.

Philip L. Steele, Hartford, CT, for Plaintiff–Appellant Gale Nestor.

Albert Zakarian, Day, Berry & Howard, LLP, Hartford, CT, for Defendant–Appellee Pratt & Whitney.

Before JACOBS, Chief Judge, WINTER and WALKER, Circuit Judges.

Judge WALKER concurs only in Part I, Part II.A, and Part II.B.2 and in the result. Judge WINTER concurs only in Part I, Part II.A, and Part II.B.1.

DENNIS JACOBS, Chief Judge.

Plaintiff–Appellant Gale Nestor ("Nestor") filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") against her former employer, United Technologies Corporation, Pratt & Whitney Division ("Pratt"), alleging that her employment had been terminated by reason of her sex. She prevailed in the CCHRO, prevailed as well on the appeals taken by Pratt in the Connecticut state courts, and collected damages of back pay and interest. She later filed this action in the United States District Court for the District of Connecticut (Covello, J.), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), seeking damages that were unavailable in the CCHRO proceedings: attorney's fees, compensatory damages for emotional distress, and punitive damages (collectively referred to as "additional relief").[1]

---

**1.** Section 706(k) of the Civil Rights Act of 1964, 78 Stat. 261, 42 U.S.C. § 2000e–5(k), authorizes the award of an "attorney's fee" to the "prevailing party" in an "action or proceeding under this title." A state administrative agency proceeding and the state's judicial review of such a proceeding are "an action or proceeding." *New York Gaslight Club, Inc. v.*

Pratt successfully moved for summary judgment on the ground that Nestor's action is barred by Connecticut's doctrine of res *judicata* (or "claim preclusion"). We vacate the judgment and remand for further proceedings consistent with this opinion.

## I.

Gale Nestor worked as a machinist for Pratt from 1973 until September 2, 1992, when she was fired after she allegedly had an altercation with a male employee. Nestor was reinstated, without back pay, in 1993 pursuant to a labor arbitration. On November 5, 1992, Nestor filed a complaint against Pratt with the CCHRO, claiming that her employment had been terminated on account of her sex, in violation of Title VII and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60 *et seq.* See 42 U.S.C. § 2000e–5(c) (requiring notification of state or local authorities). Her complaint was automatically cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

The CCHRO apparently advised Nestor that it could not award compensatory damages, but that full damages could be awarded in state court. At that point, Nestor had a choice: she could pursue the CCHRO proceeding, or after passage of a "deferral" period, she could have request-ed a "right-to-sue" letter and brought an action in state or federal court to recover full relief.[2] Nestor went ahead with the CCHRO proceeding, which offered her certain advantages:

> representation by CCHRO staff counsel (at a fee below the cost of private counsel), flexible evidentiary rules, no requirement of discovery, and speedy proceedings (though this last advantage was not realized in Nestor's case).

The CCHRO conducted the public hearing on Nestor's claim in June 1998, and decided the case on September 20, 1999, finding that Pratt terminated Nestor's employment based on her sex, and awarding Nestor back pay.

Pratt appealed to the Connecticut Superior Court, which affirmed the CCHRO decision on February 20, 2001. Pratt further appealed to the Connecticut Appellate Court, which also affirmed on September 10, 2001. Pratt's timely petition for certification to the Connecticut Supreme Court was denied. Pratt thereafter paid Nestor back pay, with interest.

On February 19, 2003, the EEOC issued Nestor a right-to-sue letter. Nestor promptly filed this action in the District of Connecticut, seeking as sole relief those remedies that are available to Title VII claimants, but that the CCHRO was not

*Carey,* 447 U.S. 54, 71, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980).

The Civil Rights Act of 1991, 42 U.S.C. § 1981a, authorizes the award of compensatory or punitive damages to a successful Title VII plaintiff who was the victim of intentional discrimination.

2. Connecticut law provides that, after a CCHRO action has been pending for 210 days, the CCHRO must grant a plaintiff's request for release of jurisdiction. Conn. Gen. Stat. §§ 46a–100, 46a–101; *see also Delvecchio v. Griggs & Browne Co.,* No. 118659, 2000 WL 640308, at *4–5, 2000 Conn.Super.

LEXIS 1149, at *11–12 (Conn.Super. Ct. April 20, 2000) (holding that discrimination plaintiff seeking remedies not available before CCHRO may initiate action in state court, but noting other court decisions holding that initiation before CCHRO is required). Similarly, Title VII provides that a discrimination plaintiff who has a pending state agency action has the right, as a matter of law, to receive a right-to-sue letter from the EEOC and to initiate a federal or state court action 240 days after the state agency action was filed. 42 U.S.C. § 2000e–5(f)(1).

authorized to award, including compensatory damages (presumably in addition to—and not duplicative of—the back pay already received), punitive damages, attorney's fees, and prejudgment interest.

Pratt moved for summary judgment in March 2004, arguing that Connecticut's doctrine of *res judicata* bars Nestor's action. The district court agreed, and granted summary judgment to Pratt on March 31, 2005. Nestor timely appealed.

## II.

The issue presented on appeal is whether a Title VII plaintiff who prevailed on her discrimination claims before a state administrative agency and in appeals of the agency decision to state court can subsequently file suit in federal court seeking relief that was unavailable in the state proceedings. This issue has split our sister circuit courts. *Compare Jones v. Am. State Bank*, 857 F.2d 494 (8th Cir.1988) (holding that Title VII plaintiff may bring suit to recover attorney's fees after successfully litigating before a state administrative body), *Patzer v. Bd. of Regents*, 763 F.2d 851, 858 (7th Cir.1985) (holding that state court judgment affirming an administrative decision did not bar a subsequent federal action for additional relief because of "national policy that Title VII remedies be available to supplement state remedies for employment discrimination"), *Lewis v. Ames Dept. Stores, Inc.*, No. 3:97CV1214 (CFD), 1999 WL 33116610 (D.Conn. Mar.31, 1999) (same); *with Chris v. Tenet*, 221 F.3d 648 (4th Cir.2000) (holding that federal court lacked jurisdiction to hear plaintiff's suit solely seeking attorney's fees incurred in a prior administrative action).

It is undisputed that the relief Nestor seeks under Title VII was unavailable in the state administrative proceedings. See *Bridgeport Hosp. v. Comm'n on Human Rights & Opportunities*, 232 Conn. 91, 653 A.2d 782 (Conn.1995). It is also undisputed that Nestor could have filed her federal action at any time after the 210–day deferral period required by Connecticut law had passed in her CCHRO proceeding. If Nestor had filed an action seeking additional relief while the CCHRO proceeding was pending, the CCHRO would have been required to relinquish its jurisdiction, and she would have lost the benefits of adjudication in that forum. Conn. Gen.Stat. Ann. § 46a–100. If Nestor had filed her action in federal court (or state court) while Pratt's appeals from the CCHRO determination was still pending, the issue presented on this appeal would likely not arise: A federal court will typically stay the action pending the state appeals and (when the appeals are decided) give *res judicata* effect to the result. See *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 487 n. 3, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

Pratt urges, however, that after the state administrative decision withstood appeal and became final, additional relief was no longer available. Pratt offers two reasons: [i] subject matter jurisdiction does not exist over a "damages only" action;[3] and [ii] the doctrine of *res judicata* bars relitigation, including relitigation of different claims to relief. We disagree with both arguments, and reverse the district court's grant of summary judgment.

### A. Jurisdiction

In *North Carolina Dept. of Transp. v. Crest Street Cmty. Council, Inc.*, 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986), the

---

**3.** Although Pratt did not raise this argument in the district court, we are nonetheless obligated "to satisfy ourselves that federal jurisdiction over the matter before us is proper." *Filsaime v. Ashcroft*, 393 F.3d 315, 317 (2d Cir.2004).

Supreme Court held that a district court lacked jurisdiction over an action seeking nothing but attorney's fees brought by Title VI plaintiffs who had prevailed in administrative proceedings. The Fourth Circuit has ruled that *Crest* applies likewise to Title VII plaintiffs, *Chris,* 221 F.3d at 654, and Pratt urges that this Court take a similar approach.

■ In the present action, however, not only does Nestor seek attorney's fees—which are specifically provided for in Title VII—she also seeks compensatory damages unavailable in the CCHRO proceeding, such as emotional distress and punitive damages.[4] Her federal action thus entails litigation of substantive issues: for example, whether Nestor suffered any emotional distress caused by Pratt's discrimination and whether Pratt's conduct was malicious. Thus, it is not simply that Nestor seeks to recover for expenses incurred elsewhere; Nestor's federal action seeks to adjudicate substantive issues regarding Pratt's discriminatory conduct and its consequences.

In light of these distinctions, *Crest* neither compels nor supports the dismissal of Nestor's action for lack of subject matter jurisdiction.

## B. *Res judicata*

■ We review *de novo* a district court decision as to whether a federal action is precluded by a prior adjudication.

*Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 93 (2d Cir.2005). The doctrine of res *judicata* bears on "the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).[5] It is a rule against the splitting of actions that could be brought and resolved together. See Restatement (Second) of Judgments § 24 (providing "General Rule Concerning 'Splitting' ").

The doctrine varies in its effect from jurisdiction to jurisdiction, depending chiefly on how courts define the claims that have or could have been litigated, and on how much weight is put on the goals of preclusion (*e.g.,* finality and efficiency). The parties to this appeal vigorously dispute whether the issue of preclusion is governed by federal law or Connecticut law; however, since Nestor's action survives either way, we do not decide the question, which implicates difficult issues of federalism. *Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 383, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *see Lyng v. N.W. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in ad-

---

4. We need not and do not decide whether a fees only suit may be brought under Title VII. *Cf. Jones v. American State Bank,* 857 F.2d 494, 499 (8th Cir.1988) (distinguishing Title VII's fee provision from the fee provision at issue in *Crest).*

5. The terminology of preclusion law can be confusing. As the Supreme Court explained in *Migra,* some commentators refer to the general preclusive effects of a judgment as "res judicata," encompassing both "issue pre-

clusion" (also known as "collateral estoppel" or "direct estoppel") and "claim preclusion." *See* 465 U.S. at 77 n. 1, 104 S.Ct. 892. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* "Claim preclusion" refers to the effect of a judgment in foreclosing litigation of a matter that was never litigated. We use the term "res judicata" in its narrow sense, as a synonym for "claim preclusion."

vance of the necessity of deciding them."); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.") (citing *Siler v. Louisville & N.R. Co.*, 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753 (1909) & *Light v. United States*, 220 U.S. 523, 538, 31 S.Ct. 485, 55 L.Ed. 570 (1911)).

### 1. Federal Preclusion Law [6]

 In considering the preclusive effect of a state court judgment on a subsequent federal action, under the Full Faith and Credit Act, 28 U.S.C. § 1738, we usually consult the preclusion laws of the state in which the judgment was issued. *See Migra*, 465 U.S. at 81, 104 S.Ct. 892; *see also Marrese*, 470 U.S. at 380, 105 S.Ct. 1327 ("Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts."). We consider whether the statute creating the federal cause of action (*i.e.*, Title VII) preempted the application of state preclusion law only if the action would be barred under state law. *See Marrese*, 470 U.S. at 381, 105 S.Ct. 1327.

Our usual approach to preemption is, however, seemingly inapplicable here. The Supreme Court held in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) that a complainant who succeeds on a discrimination claim that is filed in a state adminis-

trative agency and that is upheld on appeal can sue in federal court under Title VII to recover attorney's fees that were incurred in the state proceedings but that are not awardable under state law. 447 U.S. at 66–68, 100 S.Ct. 2024. In holding that Congress intended to authorize a suit under Title VII "solely to obtain an award of attorney's fees for legal work done in state and local proceedings" irrespective of whether such a claim for fees would be permissible under state law, the Court did not consider Title VII to have preempted the application of state law, but rather considered the federal action for damages to be a "supplement" to state remedies "when the State does not provide prompt or complete relief." *Id.* at 65–68, 100 S.Ct. 2024. As the Court explained, allowing recovery in federal court of fees incurred in the state proceedings furthers the goals of Congress:

> Title VII explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices. Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums. One aspect of complete relief is an award of attorney's fees, which Congress considered necessary for the fulfillment of federal goals. Provision of a federal award of attorney's fees is not different from any other aspect of the ultimate authority of federal courts to enforce Title VII. For example, if state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to "supplement" the state remedy.

---

**6.** Judge Walker, who concurs in Part I, Part II.A, and Part II.B.2, does not reach or decide whether federal law provides a federal forum for claimants seeking additional relief un-

available in the state proceedings even if state law would not permit such an action to go forward. Judge Walker therefore does not subscribe to this subsection of the Opinion.

*Id.* at 67–68. Moreover (the *Carey* Court held), "if it can be said that [Title VII's attorney's fee provision] preempts the state rule, we believe that Congress' intent to achieve this result is manifest," and is authorized by the Fourteenth Amendment. *Id.* at 68, 100 S.Ct. 2024.

▮▮▮ Pratt argues that *Carey* has been eroded by *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), in which the Supreme Court held that a state court judgment affirming the denial of a Title VII claim precluded the claimant from bringing a federal action to relitigate the liability determination. *Kremer* explained that, in enacting Title VII, Congress did not intend "to override the historic respect that federal courts accord state court judgments." 456 U.S. at 471–72, 102 S.Ct. 1883.[7] However, nothing in *Kremer* (or in any subsequent Supreme Court holdings) overturns *Carey,* and we can read the two cases together as holding that a state court's decision on the merits of a discrimination claim is entitled to full faith and credit, but that Title VII permits a claimant to seek—in federal court—"supplemental" relief that was unavailable in the state court.[8]

▮▮▮ Admittedly, there are two main distinctions between *Carey* and the case on appeal: (1) Nestor seeks compensatory and punitive damages as well as attorney's fees; and (2) this federal action was filed after the state court judgment affirming the agency's determinations became final, rather than (as in *Carey)* during the pendency of the appeals from the agency's decision. Neither point seems critical: As in *Carey,* Nestor's federal action affords a victim of employment discrimination no more than the relief she is entitled to get under Title VII and it in no way impedes the state's exercise of its regulatory powers.

Pratt raises several additional arguments in support of preclusion of Nestor's federal action: comity, duplication of proceedings, and fairness. As to comity, the federal action considers additional relief provided under federal law without re-considering or re-visiting any issue that the state court decided. No doubt, there may be an infringement on state interests in that the federal action disregards the state's limits on the appropriate remedies for violation of discrimination laws, but the *Carey* Court held that such interference has been authorized by Congress. 447 U.S. at 68, 100 S.Ct. 2024. As to duplication, Nestor's federal action does consider relief to remedy the same wrong, but it cannot be argued that a Title VII plaintiff must seek all relief in a single action or proceeding. Under *Carey,* Nestor could undoubtedly have filed this action during the pendency of state court appeals from state administrative proceedings. The filing of Nestor's federal action after the state court judgment became final—rather

---

7. Under *Kremer,* therefore, Pratt cannot contest the Connecticut state court's determination that Nestor was dismissed by reason of illegal sex discrimination—a point which Pratt uses to support its fairness argument regarding why Nestor should also not be permitted to "relitigate" damages. *See infra.*

8. "It is not within our purview to anticipate whether the Supreme Court may one day overrule its existing precedent. 'If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.' " *United States v. Santiago,* 268 F.3d 151, 155 n. 6 (2d Cir.2001) (alterations in the original) (quoting *Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)).

than before—adds nothing to the amount or burden of litigation.

■ Pratt contends that it is unfair to allow the plaintiff to (in effect) relitigate damages while binding the defendant to liability findings, particularly when (as here) liability was decided in an administrative forum that did not afford such basic procedures as discovery. There is force to this argument. However, the same detriment was inflicted in Carey, and our analysis is unaffected by whether the federal action is filed before or after the state judgment becomes final. Moreover, the preclusive effect of the state ruling on liability does not depend wholly on the proceedings of the state administrative agency. In Title VII cases, federal courts do not give preclusive effect to state agency decisions unless they have been reviewed in court. *See Univ. of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Kremer,* 456 U.S. at 470 n. 7, 102 S.Ct. 1883. The CCHRO's liability determination binds Pratt only because Pratt appealed and lost in state court.

### 2. *Connecticut Preclusion Law* [9]

■ Even if state preclusion law controls, Nestor's action survives. In Connecticut, "under the doctrine of *res judicata,* or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim ... [or any claim based on the same operative facts that] *might have been made." Connecticut National Bank v. Rytman,* 241 Conn. 24, 694 A.2d 1246, 1256–57 (Conn.1997) (emphasis in original; second emendation in original; internal quotation marks omit-

ted); *see State v. Ellis,* 197 Conn. 436, 497 A.2d 974, 988–89 (Conn.1985). "The doctrine of res *judicata* is one of rest and is enforced on the ground of public policy.... To prevent a multiplicity of actions, equity will enjoin further litigation...." *Corey v. Avco–Lycoming Division,* 163 Conn. 309, 307 A.2d 155, 159–60(Conn.1972) (internal citation omitted).

■ In determining what claims were or could have been litigated in a prior action, Connecticut law applies the "transactional" test described in Section 24 of the Restatement (Second) of Judgments:

> The claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*See also Orselet v. DeMatteo,* 206 Conn. 542, 539 A.2d 95, 97 (Conn.1988) (emendation in original) (quoting Restatement (Second) Judgments § 24); *see also Duhaime v. American Reserve Life Ins. Co.,* 200 Conn. 360, 511 A.2d 333, 334–35 (Conn. 1986). Therefore, Pratt contends, *res judicata* in Connecticut operates to extinguish all rights regarding the transaction, even if claims for additional remedies could not have been made in the prior proceeding. This argument overlooks an exception.

Section 26(1)(c) of the Restatement (Second) of Judgments provides an exception to the rule against splitting an action where

> [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority

---

9. Judge Winter, who concurs in Part I, Part II.A and Part II.B.1, and in the result, does not reach or decide whether Connecticut law

bars Nestor's action. Judge Winter therefore does not subscribe to this subsection of the Opinion.

to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief. . . .

This Restatement provision has been adopted as Connecticut law, see *Connecticut Water Company v. Beausoleil,* 204 Conn. 38, 526 A.2d 1329, 1335 (Conn.1987), and as the law of other jurisdictions that employ the transaction test of the Restatement.[10]

The defendant in *Beausoleil* had been found liable in an administrative enforcement proceeding for contaminating the public water supply system, and was later sued in tort for damaging the private reservoir of a landowner who had intervened in the enforcement action. The Connecticut Supreme Court held that the private suit for damages was not precluded, because the plaintiff had been unable to seek damages in the administrative enforcement proceeding. The Connecticut Supreme Court recognized the exception to *res judicata* for later actions that assert claims or seek relief that could not have been pressed or recovered in the prior proceeding. *Id.* at 47–48, 526 A.2d 1329.

 We see no reason why this exception is not equally applicable in the Title VII context. The Connecticut Supreme Court has explained that "doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." *Isaac v. Truck Service, Inc.,* 253 Conn. 416, 752 A.2d 509, 513 (Conn.2000) (internal quotation marks omitted) (holding that a prior small claims court action for recovery of property damages was not *res judicata* in a subsequent lawsuit for personal injury). Connecticut and the federal government share an interest in having employment discrimination claims adjudicated in state agencies. Thus Connecticut set up the CCHRO as a faster and less expensive alternative to litigation in the trial courts; we doubt that Connecticut would apply res *judicata* in a way that would limit the relief available to claimants who use the CCHRO, and thereby furnish an incentive to litigate in court. Pratt's weak authority to the contrary is unpersuasive (and unpublished).[11]

The judgment is vacated, and the case is remanded for further proceedings.

---

10. *See, e.g., Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986) (noting that New York, which uses the transaction test for judgments, does not apply res judicata where "the initial forum did not have the power to award the full measure of relief sought in the later litigation"); *Delaware Valley Transplant Program v. Coye,* 722 F.Supp. 1188, 1196 (D.N.J.1989) ("Under New Jersey law of claim preclusion, if the claim was one that could not have been brought, it cannot be precluded."); *Esslinger v. Baltimore City,* 95 Md.App. 607, 622 A.2d 774, 783 (Md.Ct.Spec.App.1993) (holding that, under Maryland law, claim for damages was not precluded because it could not have been asserted in the prior action); *Lien v. Couch,* 993 S.W.2d 53, 56 (Tenn.Ct.App.1998)

(adopting Section 26(c)(1)'s exception to *res judicata).*

11. Pratt cites one case in which *res judicata* was interposed to bar a subsequent action seeking relief unavailable in the prior proceeding: *Cabrera v. Department of Social Services,* No. X04CV0124541S, 2002 WL 31124658, 2002 Conn.Super. LEXIS 2772 (Conn.Super.Ct. Aug.19, 2002). However, that opinion is unpublished, has never been followed, and likely misstates Connecticut law on preclusion. A later opinion of the Connecticut Superior Court reached the opposite result. *See Lyon v. Jones,* CV010812369S, 2006 WL 618580, 2006 Conn.Super. LEXIS 595 (Feb. 28, 2006).